## THE 99 PLAINTIFFS *a.* VANDERBILT.

*Supreme Court, First District ; Special Term.*
*New York Superior Court ; General Term.*
*New York Common Pleas ; Special Term.*
*January,* 1855.

### POWER OF COURT OVER ATTORNEYS.—RIGHT TO CALL FOR INFORMATION.

The court may compel an attorney bringing suits on behalf of a number of persons, as plaintiffs, against one defendant to disclose the names and residences of his clients.

They may also require him to exhibit his authority to bring the suits.

Order to show cause why the attorney of the plaintiffs should not furnish certain information.

There were ninety-nine suits brought in behalf of ninety-nine different plaintiffs, against the proprietor of the line of vessels known as " Vanderbilt's line for California and Nicaragua." Nineteen of these suits were brought in the Supreme Court, forty-six in the Superior Court, and thirty-four in the Common Pleas. They were all brought by the same attorney. The causes of action in the suits were alike, the same printed form of complaint being used in each case.

The complaint contained *six* counts. The ground of each action was in substance that the defendant was a common carrier, and owner of a certain line of vessels and conveyances, used in the transportation of passengers and baggage from the port of New York to the port of San Francisco in California, by the way of Nicaragua. That on the — day of ——, 1852, he received the plaintiff on board of one of the vessels of said line as a passenger, to be conveyed from the city of New York to San Francisco aforesaid, for hire and reward. That it then became his duty to carefully convey him as soon as he reasonably could, without delay—furnish him with bed and accommodation, good and sufficient food, &c.—to have provided sufficient room, and not overcrowded the same. The com-

plaint then stated various violations and neglect of the obligations thus assumed, the injury and damage resulting from them, and demanded judgment for the damages.

Early in October, 1854, the defendant obtained in the Superior Court an order in the suits brought in that court, requiring the attorney for the plaintiffs to show cause as follows:

1. Why he should not furnish to the attorney of the defendant, a sworn statement, showing the Christian names in full, and the residences of the plaintiffs in the actions respectively, and specifying the state, county, and town, or village where such plaintiffs respectively resided; and if they or any of them, resided in a city, the street and number of their residence.

2. Why he should not be required to produce such plaintiffs personally in court, or to furnish proof that the plaintiff in each case is living.

3. Why he should not furnish proof of his authority to prosecute the actions, and disclose the means by which such authority was communicated; if in writing, why he should not deposit the writing with the clerk.

4. Why he should not, (in case the court should permit the actions to proceed), file security for costs in those actions in which the plaintiffs should appear to be non-residents of the State.

5. Why, (if the court should permit the actions to proceed), the complaints should not be set aside as not conformable to § 142 of the Code; or why the plaintiffs should not be compelled to elect on which of the counts or causes of action they would rely, and why the residue should not be stricken out.

6. Why the proceedings in all the actions except one, should not be stayed, until such action should be determined; and why the defendant should not have such other order as might be proper.

From the affidavits on the part of defendant on which this application was based, it appeared that the defendant was the owner of the line called Vanderbilt's line for California and Nicaragua; but was not the owner of the S. S. Lewis, the vessel by which passengers were to be carried from San Juan del Sur to San Francisco. It was between these two latter

points that the delay complained of, took place. One D.· B. Allen was however agent for the whole line, and he sold tickets to San Francisco, to passengers, at the only office of the ·defendant's line. Allen, as agent of .the line, engaged the ·S. S. Lewis to sail from New York in March, 1852, to go to San Juan del Sur, and take passengers from thence to San Francisco ; but she was delayed in going round Cape Horn, in consequence of which the passengers were delayed at San Juan del Sur, and obliged to betake themselves to a sailing vessel, of which Mead & Co., were agents, to take them to San Francisco. It was also stated that Mead & Co., received in payment for the passage on board their vessel, the tickets issued by Allen for the S. S. Lewis.

The affidavits also stated that some of the plaintiffs were dead,—that some of the complaints did not furnish the full Christian names of the plaintiffs, but only their initials,—that ·the attorney of the plaintiffs being called upon for his authority to commence these suits, declined to exhibit any except the passenger tickets for the S. S. Lewis, issued by Allen.

Mead & Co., reside at San Juan del Sur. One of ·that firm, however, being casually in New York, made affidavit that they authorized the suits, and did so by virtue of a verbal and written power of attorney from each of · the plaintiffs, and that the written power had been burnt.

Upon the return of the order to show cause, in the Superior ·Court, the application was reserved to be considered at general term.

· An application substantially similar was subsequently made in the Supreme Court, and also in the Common Pleas, in the suits brought in those courts.

A consultation upon the subject was had among the judges of the three courts, and they agreed in opinion that they might, and under the circumstances ought to, require the attorney of the plaintiffs to disclose the names and residences of his ·clients, and his authority to bring the suits. The decision to this effect·was rendered early in January ; and an order requiring the attorney to furnish that information, and meantime ·staying proceedings in the several suits until the further order ·of the court, was drawn up by Mr. Justice Hoffman of the

Superior Court, and Judge Woodruff of the Common Pleas, and was made and entered in each of the suits in those two courts. This order is given in full in the opinion of Mr. Justice Hoffman, below. The order in the Supreme Court was left to be settled pursuant to the opinion rendered in that court.

*W. Silliman*, attorney for plaintiffs and of counsel.

*H. F. Clark*, attorney for defendant, and of counsel.

The following opinions were rendered in the Supreme and Superior courts upon granting the order.

SUPREME COURT.—MITCHELL, J. — (After stating the facts upon which the application was based). The right of the court to compel an attorney of the court to exhibit his authority to sue, arises from the control which it exercises over all its process and proceedings, and over its officers in order to prevent abuse. It arises from no statute, but emanates from the breast of the court, and from its desire to cause justice to be done ; and as it emanates from the court, so it is to be exercised only on such terms and conditions, and in such manner as the court shall perceive will contribute to justice between the parties. The defendant cannot insist on its exercise as an absolute right, without submitting to such terms as the court may impose. He cannot insist that the action be dismissed because the power is not produced, nor that it be stayed forever unless it be produced, but in all cases must ask for the exercise of the discretion of the court, and submit accordingly to such terms as the court may choose to impose as a condition of its exercise of such discretion.

There is reason to believe that the plaintiffs' attorney has no knowledge of the plaintiffs in this action, that he has never seen them, and has never had any authority from them to sue except such as was given to Mead & Co. What the extent of that authority was, is left quite uncertain. Mead & Co. do not state even its substance ; although it is burnt, they can state, and should state, according to their best recollection and their best means of obtaining information, in what precise words it was written. Then the court can judge whether it

The ninety-nine Plaintiffs *a*. Vanderbilt.

was an authority to sue merely for the consideration money paid for the passage from San Juan del Sur to San Francisco, or for that and also for the loss and injury to the plaintiffs, caused by the delay to which they were subjected and for the inadequate food and accommodations. These last grievances were personal to the passengers and probably could not be assigned—the first admitted of being assigned. The possession of the tickets by Mead & Co. leads to the presumption that they received the tickets (as the defendant alleges) in payment of passages furnished by them in their brig to the passengers, and under a verbal authority to recover from whoever was liable the amount paid for such tickets. Thus far Mead & Co. show a *prima facie* authority to sue in that limited way, and if they chose to confine their actions to such a claim there is no reason for staying their proceedings. The defendant shows no defence to the action, but alleges facts from which it is to be inferred that he held himself out to passengers as furnishing to them tickets which would carry them through the whole distance from New York to San Francisco, and that representation he should make good; and if Mead & Co., to save his honor, have forwarded passengers whom he contracted to forward, but by accident could not forward, he should without delay fully reimburse them, at least all that he received for the tickets for the part of the voyage which they completed in his place. Yet he has allowed more than three years to elapse and has not yet paid the money thus spent by Mead & Co. for his benefit and for the sustaining of his honor as a merchant. He therefore should submit to such terms as justice will require, and as will prevent the power of the court to stay the plaintiffs' proceedings from being abused. The power originates from a desire to prevent abuse on one side, and must be exercised with such limitations as will prevent abuse on the other side. He seems to consider it a defence that the S. S. Lewis left so shortly before these passengers left New York, that they ought to have known that they could not go by it. This would show that he knew they could not go by it, and so that he contracted to do what he knew he could not do—but the passengers canot be presumed to know any such matters.

There is no fraud imputable to Mead & Co., or their attor-

ney, but their affidavits do not show with certainty whether the instrument executed to them was an assignment or a mere power of attorney, nor what the extent of the power was, and until that be shown they should not be allowed to use the names of these plaintiffs. If it is a mere power to sue on the ticket, they have no right to retain all the counts contained in these complaints; and then they have no power to sue even in their own names for the passengers who are dead, for the power would cease at the death of the constituent. If it is an assignment with a power, the power survives—but under our Code the suit would necessarily be in the name of the assignee, and be confined to such matters as could pass by assignment. For these reasons the very words of the instrument containing the power should be stated as nearly as practicable.

The court would not attempt in this interlocutory proceeding to prevent the Meads from suing in their own name for any cause of action, nor from suing in the names of the plaintiffs for any thing which the plaintiffs have authorized them to sue for—but it has the same right to compel them to show their authority for using a third party's name, which it has to compel an attorney of this court to show it. The attorney is called on for his authority, and refers to the Meads as his immediate constituents—that is showing no authority from the plaintiffs, until the Meads show how far they are authorized by the plaintiffs to act. If it should appear that the instrument given to the Meads was an assignment, so that the action should be in their names, the court might impose as a condition of any stay that the defendant should stipulate not to raise that as an objection, the court regulating the matter of costs as might be deemed just; it might also require the defendant to admit the facts as to his connection with this line, and require him to expedite the trial of the cause, and to put in an answer promptly, and consent to the issuing of commissions and examine witnesses without prejudice to the present motion and to the order to stay the trial; and also to consent not to object at the trial to a variance between the complaint as alleged and as it may be proved. One necessity for the numerous counts in the complaint is the uncertainty whether the proof will show the contract to be to carry from San Juan del Sur to San

Francisco, or directly through all the distance from New York to San Francisco, and yet the difference does not affect the rights of the parties, and should not therefore be objected to at the trial. If, as has been intimated, the defendant is ready to do what is just, the whole matter may now, perhaps, be adjusted.

There are other matters moved for as to which it is unnecessary now to pass; the draft of an order for staying proceedings will be submitted to the counsel, that the plaintiffs' attorney may suggest such conditions as he may deem necessary, and the defendant's attorney may submit amendments thereto. The stay is to be until the further order of the court, so as to be under the control of the court.

SUPERIOR COURT.—OAKLEY, C. J.—(Orally)—A question presented in this case is, how far this Court can control the actions of its attorneys. Upon consideration we have come to the conclusion, both on principle and authority, that we have the power, and that it is our duty, if the case demands it, to order the attorney to disclose the residences and individualities of his clients, who they are and where they are to be found.

The defendant cannot always be aware who are his opponents. It may happen, and in this case it does, that he may be attacked by a number about whom he knows nothing. We think this power is involved in the general powers of the Court over its attorneys. We have therefore made an order,— in concurrence I may remark, with the Judges of the other Courts,—the substance of which is that the attorney by affidavit should disclose formally what he has probably disclosed in effect in the other Courts. The reasons for our decision are more fully stated in an opinion by one of the justices of the Court. The questions as to a stay of proceedings and the right of the plaintiffs to go on with the suit, may be considered hereafter.

HOFFMAN, J. (after stating the facts in the case at length.)— 1. The authorities cited are decisive of the right of the court to call for the residences and occupations of the plaintiffs respec-

tively. In Johnson *v.* Birley, (5 *Barn.* & *Ald.*, 540), this was done in the case of an assault, where numbers were present, and the defendant could not ascertain on inquiry, who the plaintiff was. The court said that the rule had generally been confined to actions of *qui tam* and ejectment, because it is only in such cases that the defendant is generally ignorant of the plaintiff or his person. Bayley Justice said that previous to the statute of Westminster, a plaintiff appeared in person, unless he had a special writ authorizing him to appear by attorney. Then the pleadings were *ore tenus*, and a defendant had the privilege of seeing and knowing who the plaintiff was. After stating some further reasons, he says:—It is necessary, in order that both parties may have a fair trial, that the information required by this rule should be given. In Worten *v.* Smith, (6 *J. B. Moore*, 110), which was an action on the case for a libel by three plaintiffs, a rule was made absolute that the plaintiff give the particulars in writing of the places of residence and occupations of the two other plaintiffs, and in the meantime all further proceedings to be stayed. It was submitted that the knowledge was important to enable the defendant to justify or otherwise to shape his defence. See also McRoeman *v.* Patrick (4 *Howard's Miss. R.*, 533), and West *v.* Houston, (3 *Harring.* 15). The good sense of such a rule is apparent, wherever the justice of the case seems to require its application.

It is here sworn to that several of these nominal plaintiffs are dead, and facts are stated to show that some others are probably so. Again, it is not improbable that Mead & Co., of St. Juan del Sur, hold the whole or most of these tickets as beneficial owners or assignees. See affidavit of Thompson and Cross. The defendants are entitled to the names of the plaintiffs and their residences to prove this fact by their own evidence if necessary, and to show that Mead & Co. have the right to sue. Again, he has a right to such information in order to enable him to obtain security for costs from nonresidents. And as it appears that many of them were forwarded by Mead & Co. from St. Juan del Sur to San Francisco by sailing vessels in 1852, the presumption is strong that some of them are non-residents. The difficulty of complying

with such a requisition in this case, forms no objection to its being made. We consider that an attorney who sues in a court, is bound to know the place of residence and occupation of his client, that it may be disclosed if the rights of the defendant require it. This part of the application must be granted.

2. The next branch of the motion relates to the exhibition by the attorney of his authority to sue in the names of these numerous plaintiffs. It is true that in general the authority of an attorney is to be presumed from his appearing on the record. And the statute has only expressly provided for the production of his power in cases of ejectment. (2 *Rev. Stats.* 4 *ed.* 567, § 12).

But the present case is very peculiar. Upon the affidavit produced by the defendant, it is made out that certainly many of these passage tickets have been transferred to Mead & Co., and are, perhaps, owned by them. The right of action to all such is, it may be assumed, vested in that firm. A single suit, then, in their name, for all such tickets would be the proper and the only action which could be sustained, to such extent as any right of action was assignable. It appears by the affidavits produced by the plaintiffs' attorney, since the argument of this motion, and agreed to be used by us, that a power or powers of attorney, were executed by a number of the plaintiffs to Mead & Co., authorizing them to employ attorneys and counsel for the purpose of enforcing their claims. It is alleged that this power has been burnt. It is not alleged that a draft or copy is not in existence, nor that the parties cannot give a satisfactory statement of its general contents. If the draft or copy was directed to the attorney, no doubt the court would ask for its production. The case cannot be varied, where it is an authority to another, to employ the attorney. In various cases the undoubted right of the court to call for an exhibition of the power of an attorney is declared. In a few it is considered as an absolute unqualified right of the defendant. Thus, in Clark *v.* Holliday, (9 *Miss. R.*, 711), it was held that the court would inquire, whenever requested, into the authority of an attorney to appear. The court in Tennessee recognized the same rule in Gillespie's case, (3 *Yerger*, 325). In McAlexan-

der *v.* Wright, (3 *Monroe's R.*, 194), it was so far qualified as to impose upon the defendant the task of showing that his rights might be jeoparded, unless it was observed. The general power was recognized in Allen *v.* Green, (*Bailey's R.*, *S. Car.*, 448). See also Cantwell *v.* Merrifee, (2 *Pike R.*, 355), and West *v.* Houston, (3 *Harring.*, 15). In 5 *Halstead*, 251, it was held that it was not the proper subject of a plea that the attorney had no authority to prosecute the suit. The proper mode was by motion to the court to stay proceedings. It seems to be the settled law in England that if a plaintiff questions the attorney's power to sue for him, and makes an affidavit denying it, nothing but a written authority will suffice. (Maries *v.* Maries, 23 *Eng. Law & Eq. R.* 22; Allen *v.* Bone, 4 *Beavan*, 493). We consider the circumstances of this case as calling upon the court to exercise its power to require the best and most perfect exhibition of the power under which he acts, that can be given, the original authority under which his authority is derived, being lost.

The order will be as follows:

Upon reading and filing the order to show cause herein, and the affidavits of the defendant and William K. Thorne and others, submitted on the part of the defendant, and also the affidavits of William Silliman, Esq. and William H. Mead, submitted on the part of the plaintiffs respectively, and also upon reading the several complaints of the said respective plaintiffs, and on hearing of counsel in behalf of the parties respectively—it is, on motion of Horace F. Clarke, Esq., of counsel for defendant, ordered,

That the attorney for the plaintiff, in the several above entitled causes, furnish in writing and verified by oath, to the attorney for the defendant, the names and present places of residences of the said plaintiffs respectively, in the manner and to the extent specified in the order to show cause; that is to say, with the christian names of the plaintiffs in each of said causes in which such christian name is not stated in the complaints respectively, and specifying the State, county, town and village where each of the plaintiffs respectively resides, and if they, or any or either of them, reside in a city, then

giving the street and number of such residence, and also specifying the occupation of the plaintiffs respectively.

. And it is further ordered, that the said attorney for the plaintiffs in the said above entitled suits do also deliver to the attorney for the defendant a sworn copy of the power of attorney under or in pursuance of which the said suits are alleged to be instituted, mentioned in the said affidavit of William H. Mead so read and filed on the behalf of the said plaintiffs upon this motion, and therein stated to have been executed by the said several plaintiffs to the said Mead, if the draft or any copy of the said power of attorney or written authority is in existence, and if not, then that he deliver a statement, verified by oath, of the substantial contents, extent, purport and effect of the same, and of the powers conferred therein, and the consideration expressed therein or upon which the same purported to be given, the interest, if any, thereby given or purported to be given to the said Mead, or to Mead & Co., and for whose use and benefit the suits alleged to have been thereby authorized were to be prosecuted, and at whose risk, cost and expense, so far as such particulars or any or either of them were contained in such power of attorney or written authority, and as nearly in the words of the said power as he may be able to furnish the same, or as may be practicable.

And all proceedings in the said several suits are hereby stayed until the further order of this court, with leave to either party to apply to the court for further or other relief, as he may be advised.

---

## DRAKE *a.* COCKROFT.

*New York Common Pleas ; General Term, January,* 1855.

### IRRELEVANT DEFENCES.—COUNTER-CLAIM.

An answer which, without denying any fact stated in the complaint, merely says that, " the defendant denies that the plaintiff is entitled to the money demanded," will be struck out on motion.

In an action by a landlord to recover rent, the tenant cannot set up as a counter-claim a mere trespass upon the demised premises, and destruction of personal property, committed by the landlord.

*Quere.*—Whether in actions at law the Code has extended the doctrine of recoupment to any cases to which it did not previously apply.