ASOCIACIÓN DE PADRES CAPUCHINOS DE PENNSYLVANIA EN PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 871.   Argued February 13, 1933.—Decided March 16, 1933.

*J. Henri Brown, Edmund Block, C. Ruiz Nazario,* and *G. E. González* for petitioner. *M. Muñoz Morales* and *De la Torre & Ramírez* for plaintiff in the summary foreclosure proceeding.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

On June 29, 1932, M. L. de Soto, who alleges to be of full age, a merchant, single and resident of Santo Domingo, Dominican Republic, initiated summary foreclosure proceedings against María Rivera Quiles, with the intervention of the "Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico." The court issued an order demanding that defendant María Rivera Quiles pay plaintiff, within the term of thirty days, the sum of $22,033.34 and directing that the Asociación de Padres Capuchinos de Pennsylvania be notified thereof so that it may proceed in the manner that it may deem most beneficial to its interest. The said Asociación de Padres Capuchinos, represented by its attorneys, filed a motion with the court praying for an order directing the attorneys of M. L. de Soto to show the reasons that they may have why they

should not be compelled to disclose the christian names and surnames of the plaintiff M. L. de Soto, the street and number of his residence and commercial establishment in the city of Santo Domingo, and that they also produce the power of attorney or authorization that said attorneys have to initiate and prosecute the summary foreclosure proceeding.

In said motion petitioner alleged that it had made investigations through its agents and attorneys to learn about the existence of plaintiff in the summary foreclosure suit, which investigations disclosed that there is no M. L. de Soto known in the commerce of the city of Santo Domingo, and that no person could be found in said city known with said name; petitioner herein alleged also in said motion that it had been informed that the said proceeding is being really prosecuted by Manuel Tous Soto, who is at the same time attorney in fact of the defendant María Rivera Quiles, and that said Manuel Tous Soto was the real attorney in said case, attorneys De la Torre and Ramírez signing the complaint because said Manuel Tous Soto can no longer practice his profession in Puerto Rico; petitioner also alleged that it had reasons to believe that if there really existed such a person M. L. de Soto, said M. L. de Soto has not really purchased or paid any amount for said note, that he is a completely fictitious assignee used by María Rivera Quiles and Manuel Tous Soto to carry into effect a conspiracy with the purpose of defrauding petitioner from the real property subject of said summary foreclosure proceeding; and that petitioner, in order to be able to present its defenses in the said proceeding in proper form, needed data regarding the so-called plaintiff and also had to learn whether the attorneys who signed the complaint, i. e., Messrs. De la Torre and Ramírez, really had authorization or power of attorney to initiate and prosecute said proceeding, and whether they know the said M. L. de Soto.

Said motion was accompanied by an affidavit of Henri Brown, as attorney for petitioner herein, wherein it was stated that there is a suit pending between petitioner herein

as plaintiff and María Rivera Quiles, Manuel Tous Soto, Franciscan Educational Conference, and Joaquín Ramón, as defendants, which suit bears number 16,367 of the District Court of San Juan and in which is alleged the conspiracy of said María Rivera Quiles, Manuel Tous Soto, Franciscan Educational Conference, and Joaquín Ramón to deprive petitioner herein of the same real property subject of said summary foreclosure proceeding, and that said defendants performed acts to carry to effect said purpose, among them the fraudulent sale in execution of said real property and its adjudication to María Rivera Quiles, and the execution by Manuel Tous Soto, as attorney in fact of María Rivera Quiles, of various mortgage notes payable to bearer, secured with mortgage on said real property, one of which, *i. e.,* the one for $20,000, is sought to be collected by means of said summary foreclosure proceeding.

Mr. Brown also states in his aforesaid affidavit that he has made inquiries from persons and entities in the city of Santo Domingo for the purpose of learning whether there really exists a person named M. L. de Soto, who appears as plaintiff in said summary foreclosure proceeding, and the residence and personal circumstances of said person, and that said attorney has not been able to find any person who knows M. L. Soto, or any merchant of said name residing in the city of Santo Domingo; it is also stated in said affidavit that the marshal of the District Court of San Juan, Mr. M. Náter Girona, informed Mr. Brown that the return of service of the writ and of the order demanding payment were prepared by Manuel Tous Soto, who personally gave the marshal the necessary data to serve said writ; Mr. Brown finally stating that he really believes that the so-called M. L. de Soto is a fictitious person, or that, if there really exists such a person residing in the city of Santo Domingo, said person has not acquired for value the mortgage note for the collection of which the said summary foreclosure proceeding

was initiated, and that the real owner of the said note, and plaintiff, is Manuel Tous Soto.

The attorneys appearing for Manuel L. de Soto entered an opposition to the motion filed by petitioner, on the ground that said petitioner had no right to appear, in accordance with the provisions of the Mortgage Law. As regards the authorization that the attorneys may have to represent M. L. de Soto they merely stated that the Asociación de Padres Capuchinos has no right to request the justification of the authority of the attorneys for plaintiff, and also cited in support thereof the cases of *Claudio* v. *Palacios et al.*, 29 P.R.R., 768, and *Plant Milling Co. et al.* v. *Navas et al.*, 22 P.R.R. 255.

Attorneys have in their favor the presumption that they act in representation of the persons for whom they assume to appear. Weeks says, in effect, that when such representation is impeached, the party supporting the negative has the burden of proof to overcome such presumption; however, as the same author adds, such party may, from the beginning compel the attorney to produce his authority, upon showing a sufficient cause therefor. The party invoking the exercise of this privilege should state facts showing or tending to show, that the attorney has not in fact the authority assumed, explaining the reasons that induce said party to believe that said attorney is not authorized to appear. Otherwise, the prima facie evidence should prevail, that is, the presumption arising from the license to practice the profession and from the fact of the appearance entered. See Weeks on Attorneys at Law, secs. 196, 198, and 200.

In the case of *Clark* v. *Willett*, 35 Cal. 534, 539, a person appearing as plaintiff alleged that the attorney had acted without his authorization. Deciding this question, the Supreme Court of California said:

". . . Upon such a question we have no doubt as to the power. Attorneys are officers of the Court and answerable to it for the proper performance of their professional duties. They appear and participate in its proceedings only by the license of the Court, and

if they undertake to appear without authority from the party whom they profess to represent, the act is an abuse of the license of the Court, which, upon the application of the supposed client, the Court has the power to inquire into and correct summarily. Otherwise, the very fountain of justice might become polluted, and a license to stir its waters become a license to defile them.''

In *State, Use of West* v. *Houston,* 3 Harrington (Del.) 15, Judge Bayard, who delivered the opinion of the court, said:

''In our practice, therefore, the court would expect some ground to be laid by affidavit or otherwise, before they would at the instance of the defendants, require the plaintiff's attorney to produce a written warrant, or other proof of his authority. Doubtless where *fraud* was suggested, and especially if a minor was concerned and in danger of being injured by an unauthorized proceeding before us, we would for the protection of either guardian, ward, or defendant, inquire into the attorney's authority; and would, if the case required it, apply other remedy than by merely striking off the *suit.*''

From a note at the foot of the case of *Doe* v. *Abbott,* 126 Am. St. R. 30, 34, we copy the following:

''Although it is generally conceded that an attorney who appears in court is endowed with authority to represent the person whom he assumes to act for, still his authority may be questioned: *Standefee* v. *Dowlin,* Fed. Cas. No. 13,284a, Hemp. 209; and when his authority is disputed, he may be required to produce it: *Prentiss* v. *Kelley,* 41 Me. 436; *McKiernan* v. *Patrick,* 4 How. (Miss.) 333; *Low* v. *Settle,* 22 W. Va. 387. The court may, by virtue of the general power which it exercises over its officers, order the plaintiff's attorney to show his authority to bring the suit: *Board of Commissioners* v. *Purdy,* 36 Barb. 266; *King of Spain* v. *Oliver,* 2 Wash. C. C. 429, Fed. Cas. No. 7814; *Allen* v. *Green,* 1 Bail. 448. Or the court may order an attorney to show his authority to sue whenever the rights of the defendant seem to require it: *Vincent* v. *Vanderbilt,* 10 How. Pr. 324; *Ninety-nine Plaintiffs* v. *Vanderbilt,* 4 Duer, 632, 1 Abb. Pr. 193. An attorney of the court may generally sue or defend without proof of his authority, but the court may, under circumstances where the ends of justice require it, order him to produce his warrant or prove his authority: *State* v. *Houston,* 3 Harr. 15. Facts or circumstances must first be shown, however, which raise a presumption that he is not authorized to appear

before his authority can be legally questioned: *Cartwell* v. *Menifee,* 2 Ark. 356; but if the right of an attorney to appear is questioned upon evidently good grounds, it is the duty of the court to require him to exhibit his authority: *Colorado Coal etc., Co.* v. *Carpita,* 6 Colo. App. 248, 40 Pac. 248.

"Whenever there is reasonable ground to presume that an attorney has commenced a suit without permission of the plaintiff, he should be required to produce satisfactory evidence of his authority; *Bell* v. *Wilson's Admr.,* 6 J. J. Marsh 495, 22 Am. Dec. 88. Or if a suit is prosecuted for the use of another in whose derivation of right to sue there is a manifest defect, the attorney must show his authority: *McAlexander* v. *Wright,* 3 T. B. Mon. 189, 16 Am. Dec. 93. But the presumption that an attorney has the authority to appear for the party whom he assumes to represent can only be overcome by the court requiring the attorney to prove the authority under which he appears, and disclose the name of the person who employed him: *Planters' etc. Fire Assn.* v. *De Loach,* 113 Ga. 802, 39 S. E. 466.''

In the case of *Bell* v. *Farwell,* 59 N. E. 955, 956, the Supreme Court of Illinois expressed itself as follows:

"An attorney is not authorized to commence a suit in the name of another unless he has been actually employed to represent the party in court. *Frye's Adm'rs* v. *Calhoun Co.,* 14 Ill. 132; *Miller* v. *Metzger,* 16 Ill. 390; *Reed* v. *Curry,* 35 Ill. 536; *Town of Kankakee* v. *Kankakee & I. R. Co.,* 115 Ill. 88, 3 N. E. 741. In the case of *Frye's Adm'rs* v. *Calhoun Co., supra,* we say (page 133) : 'An attorney is not permitted to commence a suit in the name of another without first receiving authority for the purpose. His position gives him the right to appear for a suitor when employed, but none to interfere in a case in which he is not retained. By the English practice an attorney is not allowed to prosecute or defend a suit unless he has a written warrant of attorney from the party. The warrant constitutes his authority to act for the suitor, and it is filed in the court in which the action is pending. In this country a warrant of attorney is not generally required, but an attorney may be appointed by parol. It is, however, as necessary here as in England that he be authorized by the party to appear for him. The only difference in the practice relates to the mode of his appointment. He must be actually employed for the purpose before he can represent the party in court. The relation of client and attorney must subsist between them. That relation cannot be created by the attorney alone. The suitor has a right to select his own attorney.' If an

attorney commence a suit in the name of another without authority, it is the duty of the court to dismiss the same on the motion of the defendant. In *Frye's Adm'rs* v. *Calhoun Co., supra,* it is said (page 133): 'If an attorney brings a suit in the name of another, the legal presumption is that he has been retained for the purpose. It is only when his right to represent the plaintiff is questioned, and the presumption that he has been engaged by him is repelled, that he can be called upon to make proof of his authority; but in such a case, if he fails to show any authority to institute the suit, the same should be summarily dismissed by the court.' And in *Town of Kankakee* v. *Kankakee & I. R. Co., supra,* the court say (page 92, 115 Ill., and page 743, 3 N. E.): 'Counsel make the point that the court erred in dismissing the case, even conceding that the suit was commenced without lawful authority, because the motion was only made by one of the defendants; that the order of dismissal should have been only as to the party making the motion. This is not tenable. The court would, of its volition, without any motion, have dismissed the suit at any time when its attention was called to the fact that it was being prosecuted without lawful authority.' The showing made by the defendant was ample, and the court was fully justified in dismissing the suit, unless attorneys for plaintiff have shown said judgment has been assigned, that they represent the assignee or beneficial owner, and that the suit is brought for the benefit of such assignee or beneficial owner.''

From the opinion rendered by the Supreme Court of the United States in the case of *Pueblo de Santa Rosa* v. *Fall,* 273 U. S. 315, 319, we transcribe the following:

''The question as to the authority of counsel was raised by motion to dismiss filed with the answer. There was a hearing upon the motion, but the trial court of its own accord postponed a decision upon it until final hearing on the merits, an order clearly within its discretion. Whether, as a matter of practice, the challenge to the authority of counsel was seasonably interposed, it is not important to decide, for in any event, the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear. In *The King of Spain* v. *Oliver,* 2 Wash. C. C. 429, 430, Mr. Justice Washington, sitting in the circuit court, said: ' . . . it would be strange, if a Court whose right and whose duty it is to superintend the conduct of its officers, should not have the power to inquire by what authority an attorney of that Court undertakes to sue or to defend, in the name of another—

whether that other is a real or fictitious person—and whether its process is used for the purpose of vexation or fraud, instead of that for which alone it is intended. The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case.' "

The practice of his profession constitutes an extraordinary privilege for the attorney, which privilege he should exercise scrupulously, conscientiously complying with the responsibilities that he assumes towards the court and his clients. It is through the attorney that the court communicates with the litigants, and on many occasions intimate and delicate duties are entrusted to the attorney for performance. Not in vain is he considered an official of the court. His duty is to avoid surprises and errors in the suits wherein he appears and cooperate to a just and correct determination of the law and the facts. The behavior of its officials cannot be looked upon with indifference by a court of justice.

A court has to be interested in the purity of its proceedings, in supervising the behavior of its officials, in facilitating the administration of justice, and in preventing the realization of acts which may subvert the ends of justice. Certainly, attorneys have in their favor the presumption that they act in representation of the persons in whose name they appear. This does not mean, however, that by virtue of this presumption they can institute and prosecute a suit until its termination, without the court being authorized, at the request of a party generally, or *sua sponte* in exceptional cases, when the ends of justice so require, to order the attorney to show the power that he has to appear in representation of his clients. When there are stated under oath facts showing or tending to show that the attorney is not authorized by his presumptive client to appear in court, the court is justified in demanding an exhibition of such authority. This authority of the court can be exercised in ordinary proceedings as well as in those of a summary nature. The same reason exists

for the exercise of this authority in one proceeding as in the other, though, stretching the argument, it might be said that its exercise is even more justified in a summary foreclosure proceeding where there only exist the defenses determined in article 175 of the regulations to the Mortgage Law.

It is alleged that the summary foreclosure proceedings can only be impeached in the instances specified in the regulations. We wish to state that the authority of the court to require that an attorney produce his power cannot be affected by a legal provision prohibiting the suspension of a certain proceeding. We should add that the court does not exercise its authority to suspend the proceeding but for the purpose of knowing whether jurisdiction has been actually acquired over a party duly represented by its attorney. Furthermore, the proceedings may continue while the investigation is made. After the issuance of the order demanding payment until the publication of the sale thirty days elapse, and there is still the term fixed by law until the said sale is had. The interested party should be diligent and not apply to the court too late.

In this case petitioner was notified of the order on the 2d of July, 1932, and on the 30th of July filed the motion that gave rise to the petition for certiorari. Though from the notification of the order to the filing of the motion there elapsed twenty-eight days, the delay of petitioner in coming into court may be explained by the fact that it is alleged that investigations were made by Attorney Henri Brown in Santo Domingo to ascertain the whereabouts of M. L. de Soto. And even so, the summary foreclosure proceeding would not have been suspended if the attorneys, at the request of the court, had produced to the satisfaction of said court their power to represent M. L. de Soto. If it is a non-existing person, or if, though existing, has not conferred power to be represented, then the proceeding is clearly null *per se,* for inexistence of party or lack of representation, and nothing is suspended if

its dismissal is decreed, because what never had legal standing cannot be suspended.

During the consideration of this matter among the justices of this Court there was raised the question as to the nature of the error attributed to the lower court, in order to determine whether an error of procedure had been committed to justify the intervention of this Court by means of a certiorari. Acting upon the motion filed by petitioner, the lower court issued the following order:

"Upon the motion of defendant Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico, and the sworn statement in support thereof, the court hereby orders attorneys Francisco de la Torre y Ramírez to appear in the chamber of this Court, Second Section, on the first day of August, 1932, at 9:30 a. m., to show cause, if any they have, why they should not be required to inform in writing the Christian name and surname of M. L. de Soto, who appears as plaintiff herein, the number of the house and the street in the city of Santo Domingo, Dominican Republic, wherein resides the said M. L. de Soto, and the name of the street in said city wherein said M. L. de Soto has his commercial establishment, and to show the Court the power of attorney or authorization, if any they have, to initiate and prosecute this proceeding in the name of said M. L. de Soto."

To this order, which is limited exclusively to the citation of the attorneys to state the reasons that they may have for not showing their authorization and reveal in detail the circumstances of M. L. de Soto, said attorneys answered in a lengthy brief contending that petitioner has no right to appear in the summary foreclosure proceeding and citing, as to the exhibition of power of attorney and without further argument, the cases of *Claudio v. Palacios et al.*, 29 P.R.R. 768, and *Plant Milling Co. et al. v. Navas et al.*, 22 P.R.R. 255.

No other reason was stated by the attorneys for not producing the power of attorney nor revealing the circumstances of the person in whose name they appear. The lower court, without any evidence having been produced, declares that the affidavit of Mr. Brown which served as a basis to the

order to show cause is hearsay and does not destroy the presumption of the existence of M. L. de Soto, who appears before the court represented by his attorneys. So the lower court understands that it is necessary that the presumption of the existence of M. L. de Soto be destroyed before his attorneys can be required to show their authority.

And we ask: How can the petitioner prove the nonexistence of M. L. de Soto, assuming that he is really a fictitious person? The only accessible evidence is that based in fruitless inquiries made in the vicinity where said person, if existing, should be known. In the complaint it was alleged that M. L. de Soto resided in Santo Domingo, and petitioner went there to inquire and obtain the information furnished the court. Mr. Brown swears that he has received said information and that he believes that M. L. de Soto is a fictitious person. This opinion is based on the inquiries made and on the unsuccessful result of the same. Notwithstanding these inquiries, nothing has been heard about M. L. de Soto. Aside from these considerations, as wisely stated by the Supreme Court of Missouri in the case of *Munhall* v. *Mitchell,* 178 Mo. App. 494, the hearing on a motion of this nature is rather an investigation and does not need to follow the strict rules of evidence.

In the case of *Thomas* v. *State,* 14 Pac. (2d) 953, 954, decided in September, 1932, it was alleged that the testimony of the submarshal to the effect that he had made inquiries to find B. F. Smith from certain persons from whom he could not obtain any information, was hearsay evidence. The State offered this testimony to show that inquiries had been made for the purpose of locating said Smith and that the same had been unsuccessful. Arguing on this evidence, the Supreme Court of Oklahoma said:

"There are certain matters which cannot always be proven by positive testimony. In a sense it is the proving of a negative. Thus in this case the state seeks to prove that the B. F. Smith, from whom defendant claims to have received the check in question, was a

myth, a fictitious person. How is the nonexistence of such claimed person to be proven? The state would not be able to produce a witness who could testify of his own knowledge there was no such person. The most it could prove was that the witnesses were in a position to know the people of the community and knew of no such person; that is, that they did not know of such a person, and no one had told them of such a person being in the community. That is really the purport and effect of the testimony here. The substance of the witness' testimony is that in his opinion no such person exists; his opinion is based on the fact that he made inquiry in the neighborhood where such a person, if he existed, should be known, and was not able to learn of any such person. Testimony of the nonexistence of a claimed person is a matter of opinion, which may be based on what is usually termed hearsay. Such testimony is not strictly speaking hearsay, but circumstantial evidence tending to prove that the claimed individual had no existence in fact.''

See also the note on recent cases appearing in Number 4 of Volume XLVI of Harvard Law Review, corresponding to the month of February, 1933, pages 715 and 716.

The Oklahoma case is very similar to the one at bar in so far as concerns the proof of the inquiries made for the purpose of locating the person sought. In that case the submarshal declared that attempts had been made to find Smith and that for said purpose he had approached certain persons from whom he could obtain no information whatsoever regarding the said Smith. In the instant case Mr. Brown declared that he inquired through certain persons from whom he could learn nothing regarding M. L. de Soto. In the former case and in the instant case the only accessible evidence in a case of this nature has been produced.

In the said case said evidence was admitted in a criminal cause for the purpose of proving the nonexistence of a person from whom appellant, charged with forgery, said that he had received a check; in this case a sworn statement was offered for the purpose of obtaining an exhibition of the authority of the attorneys who appear representing the said M. L. de Soto. The lower court disregards the evidence and evades

practical action, based on erroneous grounds. To hold that it is necessary to destroy the presumption of the existence of a person in order to be able to act in a case like this, basing such conclusion in that the evidence produced is hearsay evidence, constitutes in our judgment an error of procedure which should be rapidly corrected. The lower court renders an order to show cause and abstains from enforcing the compliance of said order without any cause having been shown. That is to say, even assuming the truth of Mr. Brown's testimony, the lower court declares that said testimony, because the same is hearsay, is not sufficient to justify an order for the exhibition of authority.

As regards the documentary evidence this Court is in the same position as the lower court to appreciate the same; but in this case it is not a question of the rightful or erroneous appreciation of proof; the question is that such proof has been eliminated because the court considered it hearsay. If the lower court, before acting in a case like this, awaits that the presumption of the existence of M. L. de Soto be destroyed, and if it is true, as the petitioner believes, that said plaintiff is a fictitious person, it can be said, most assuredly, that no positive and direct evidence of his nonexistence will ever be produced and that, if such evidence is required to be produced, the court would never have the opportunity of exercising its authority since it is materially impossible to find such evidence.

It is our opinion that facts and reasons have been stated under oath which justify an exhibition of authority on the part of the attorneys who appear representing M. L. de Soto. Petitioner believes that plaintiff is a fictitious person and offers the court data regarding the unsuccessful outcome of its attempts to ascertain the existence or the whereabouts of the said subject. In view of these allegations it is only natural that the court should attempt to ascertain whether it has before it a party invoking its jurisdiction to obtain justice, or whether the name of a nonexistent person is used for the

purpose of provoking, by means of the action of the court, a subversion of justice.

When facts, from which the possibility of a fraud arises, are stated to the court, should the court abstain from acting on the ground that if fraud is perpetrated the interested party may recover in an ordinary suit? Is it not more fair and correct that the court adopt the measures that it may have available to prevent that possibilities may turn to realities and to prevent that its jurisdiction and powers be used for illicit purposes not authorized by the law? In so doing the court is only adopting a preventive measure for the furtherance of justice. If the allegations inducing its action should turn out to be unfounded any annoyances that may have been occasioned to the attorney requested to show his authorization to appear, are compensated by his justification, emerging unmarred from the test to which he is subjected, and by the restoration of peace to the judicial conscience when the shadows cast on the proceedings disappear.

As we have previously stated, the court may, at the instance of a party or *sua sponte,* when the ends of justice so require, request that an attorney show the authority with which he appears in the name of another person. We do not consider petitioner as completely foreign to the proceeding. After reading the pleadings we can hardly reach the conclusion that that petitioner has no interest in the immovable subject to be foreclosed by summary proceedings and as to which real property there is pending a suit instituted by said petitioner. By virtue of said pleadings the court has learned facts which justify an exhibition of the power to appear on the part of the attorneys who initiated the summary foreclosure proceeding in the name of M. L. de Soto.

The court knows that there is an attorney who states under oath that he has made unsuccessful inquiries for the purpose of ascertaining the existence and whereabouts of M. L. de Soto and that he believes that said M. L. de Soto is a fictitious person, and the court further knows that in the complaint

in the summary foreclosure proceeding M. L. de Soto appears as merchant, single and resident of Santo Domingo, and that now the said M. L. de Soto appears as residing accidentally, in a temporary condition, in the hacienda Mesa Chica, belonging to Mr. Epifanio Zubieta, at Patlanta, state of Vera Cruz, Mexico. The court may, at any time, dismiss a proceeding which happens to be inexistent because the same had been instituted without authority. Without a moving party there can be no action or proceeding and a court cannot lack authority to ascertain, when there are reasons to justify it, whether a person appearing before the court as plaintiff in a proceeding or action is or not a fictitious person.

For the foregoing reasons the order rendered by the District Court of San Juan on the 3d of December, 1932, should be set aside and the case should be remanded to said court for further proceedings not inconsistent with the terms of this opinion.

Mr. Justice Wolf, dissenting.

From the standpoint of our customary jurisprudence, the most important point in this case is the interpretation to be put upon article 175 of the Mortgage Regulations. With a number of assumptions in favor of the petitioner herein, the case nevertheless could have been and should have been disposed of on the facts.

It may be assumed for the moment, therefore, that in this particular certiorari proceeding we had the right to inquire whether or not the court sufficiently exercised its discretion or took all the means at its disposal to investigate the authority of the attorney to institute a mortgage proceeding in the name of M. L. de Soto or to investigate the existence or nonexistence of the plaintiff therein, namely, M. L. de Soto. With such an assumption I maintain that the petitioner before us never sufficiently overcame the presumption of authority that exists in favor of the due appearance of an attorney. When an attorney appears in the name of a party,

the existence of such a party is necessarily presumed as well as the fact that the attorney derived his authority from such a person.

The majority opinion literally recognizes that the presumption in favor of the right of an attorney to appear for a party is a strong one, but that opinion necessarily considered that the presumption was either overcome or that in supposed suspicious cases the duty of the court, even in a summary proceedings under the Mortgage Law, was to make a wider investigation. The basis of the majority opinion was that the court below did not go far enough.

The action of the court was made to depend exclusively upon the affidavit of Henri Brown, one of the attorneys for the Padres Capuchinos. He made a strong showing, of course largely on information and belief, that there was not, as set up in the initial writing presented in the court below, such a merchant as M. L. de Soto in Santo Domingo. The affiant stated that he made a great number of efforts to prove through various persons in Santo Domingo that they had never heard of M. L. de Soto. However, informations from banks or merchants would not satisfy me that a person whose natural occupation is that of a merchant may not exist and still be unknown to the various persons from whom the affiant's information proceeded. The essential words were that M. L. de Soto, merchant, bachelor, and a resident of Santo Domingo, presents an initial writing, etc. M. L. de Soto may have been by occupation a merchant and retired. It is easily possible that a person who was once a merchant and whose activities have ceased should not be known to merchants or bankers, especially if he kept no accounts in the banks. It is a matter of common knowledge in Puerto Rico that many persons do not deposit their money in banks. I shall not attempt to analyze all the possibilities not excluded by the affidavit of Mr. Brown.

I do not question the jurisprudence cited by this Court to the effect that the nonexistence of a person could not

be shown by positive testimony, but it must be proved by the reasonable exclusion of the opposite possibility. In a criminal trial, where perhaps the highest proof is necessary, a man may still be convicted on circumstantial evidence. I do not maintain that the evidence in a civil case should be as strong as that required in a criminal case, but no doubt can arise that the presumption in favor of the due appearance of an attorney is so strong and so necessary for the administration of justice, that an affidavit should exclude every reasonable possibility that the plaintiff in the mortgage proceeding did in fact exist. From the time of the *Osborn* case and the opinion of Chief Justice Marshall therein the force of the presumption in favor of an attorney has increased rather than diminished. *Osborn* v. *United States Bank,* 9 Wheat, 738; note to *McAlexander* v. *Wright,* 16 Am. Dec. 98; *Doe* v. *Abbott,* 126 Am. St. R. 30 and note.

The question of whether the presumption had been overcome was presented to the district court. Whether or not that court arrived at its conclusion by a similar mental process that the writer does, the fact nevertheless is that the court below thought that such presumption had not been overcome by the affidavit of Mr. Brown. The court had all the evidence before it, and, as in every other case, had a right to weigh it, and its conclusion should have been final to this court. It may be said that there was involved in this case nothing more than a weighing of the evidence. I come then to consider other aspects of the case.

The law defines certiorari as follows:

"A writ issued by a superior to an inferior court requiring the latter to send to the former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where procedure is not according to the course of the law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds." (Comp. Stat. 1911, section 1349.)

The fact that the court may or may not have been mistaken in the weighing of the evidence is not an error of jurisdiction or procedure and is not reviewable by certiorari. *Arribas* v. *District Court,* 9 P.R.R. 436; *Axtmayer* v. *District Judge,* 14 P.R.R. 623, and *Del Toro* v. *Municipal Court,* 16 P.R.R. 89.

There is another procedural matter which the writer thinks should be decisive of the case. The Asociación de Padres Capuchinos never became a party in the mortgage proceeding, as I understand the law. The Mortgage Regulations provide that subsequent creditors should be notified of the proceeding, but they do not become parties. This only gives them an opportunity to appear at the auction sale and bid in the property. Because the Asociación de Padres Capuchinos was the owner of the soil on which the mortgaged building was located and because it had filed a suit and entered a notice of *lis pendens* in the registry, it was thought advisable to notify it of the foreclosure proceeding. This did not make the Asociación de Padres Capuchinos a party, and the conclusion in the petition that the said association became a party was not justified. An attaching creditor might also note his suit in the registry and a court similarly but unnecessarily could give him notice of the mortgage proceeding.

I now come to consider the interpretation of article 175 of the Mortgage Regulations. This is a clear case of *expressio unius est exclusio alterius.* The summary character may only be changed in the enumerated cases. Section 14 of the Civil Code of Puerto Rico, edition of 1930, reads as follows: "When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." Article 175 does not mean that at the election of a party or of a court any matter may be investigated, but all matters except those enumerated in that section are relegated to a plenary suit wherein every question may be raised. Less than almost anything else

should the authority to appear in the name of a party be questioned in a summary proceeding under the Mortgage Law. If it could, in cases easily imaginable a creditor could frequently, if not always, be required to show the authority of his attorney.

The record shows that the Asociación de Padres Capuchinos had a suit pending and noted it in the registry. Like a debtor or any other person who might have a claim to the property, a supplemental complaint might have been filed in the same suit to cause the ventilation of the charges of fraud and conspiracy made by the Asociación de Padres Capuchinos against Manuel Tous Soto and María Rivera Quiles. I find no hardship at all in requiring a debtor or any other person to resort to a plenary suit to attack a mortgage proceeding. If obstacles are to be thrown in the way of the collection of debts, the difficulty for a person to obtain money will be increased. This was made clear enough in the reasons for the passing of the Mortgage Law. The proceeding is not as drastic as that which exists in various of the states of the Union where in substitution of a regular mortgage, deeds of trust are given whereby the trustees have power to sell without any court proceeding, after a notice in the newspapers to the effect that the mortgaged property will be sold on a certain date and at a certain time, of course after the debtor has defaulted.

I find no reason for making an exception in this case, and the action of the district court should not have been annulled.

I am authorized to state that Mr. Justice Aldrey agrees with this opinion.