GEO. P. PLANT MILLING CO. ET AL., EJECUTANTES Y APELANTES, *v.* NAVAS ET AL., EJECUTADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Arecibo en un procedimiento hipotecario.

No. 1265.—Resuelto en abril 6, 1915.

PROCEDIMIENTO HIPOTECARIO—PERSONALIDAD—PROCURADORES—ABOGADOS.—En la actualidad no existen en Puerto Rico los procuradores a que se refiere el inciso primero del artículo 169 del Reglamento Hipotecario: de ahí que no puede dársele estricto cumplimiento a sus disposiciones, bastando que la comparecencia se haga por medio de abogado legalmente autorizado para ejercer su profesión, de acuerdo con lo dispuesto en el artículo 51 del Código de Enjuiciamiento Civil.

ABOGADOS—FUNCIONARIOS DE LA CORTE.—De conformidad con los principios que informan la legislación vigente sobre la materia, un abogado debidamente autorizado para ejercer su profesión está considerado como un funcionario dé la corte.

PROCEDIMIENTO HIPOTECARIO—VENCIMIENTO DE UNO DE LOS PLAZOS—VENCIMIENTO TOTAL DE LA OBLIGACIÓN—INSCRIPCIÓN EN EL REGISTRO.—El artículo 130 de la Ley Hipotecaria se aplica al caso en que vencido un plazo deba entenderse vencida la totalidad de la deuda, estipulación que debe hacerse constar expresamente e inscribirse en el registro, pero no impide que pueda cobrarse por la vía sumarísima el plazo vencido inmediatamente después de que lo sea;. tal como prescribe el artículo 168 del Reglamento Hipotecario.

ID.—CERTEZA DE LA DEUDA.—Para que pueda despacharse la ejecución, de acuerdo con la letra y el espíritu de la Ley Hipotecaria es necesario que conste en forma auténtica y fehaciente la certeza de la deuda.

Hipotecas — Deudas — Préstamos de Dinero — Obligaciones Futuras. — Aun
    cuando, generalmente, las hipotecas se constituyen para garantizar deudas
    previamente existentes o préstamos de dinero, ello no implica que no puedan
    constituirse para asegurar obligaciones futuras.

Los hechos están expresados en la opinión.

Abogado de los ejecutantes: *Sr. Antonio Sarmiento.*

Los ejecutados no comparecieron.

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra una resolución de la Corte de Distrito de Arecibo por virtud de la cual dicha corte se negó a ordenar el requerimiento del deudor en cierto procedimiento hipotecario.

El 29 de octubre de 1914, Geo. P. Plant Milling Co., de San Luis, Mo.; Texas Star Flour Mills, de Galveston, Texas, y The Wichita Mill Elevator Co., de Wichita Falls, Texas, por medio de su abogado Don Antonio Sarmiento, archivaron en la Corte de Distrito de Arecibo un escrito acompañado de varios documentos, iniciando un procedimiento hipotecario sumarísimo contra Manuel G. Navas y Hortensia Balseiro Marín.

En el escrito inicial se alegaron, en resumen, los siguientes hechos:

1. Que Manuel G. Navas, esposo de Hortensia Balseiro Marín, con anterioridad al 10 de julio de 1913, se encontraba adeudando a las ejecutantes las siguientes cantidades: a Geo. P. Plant Milling Co., $2,000; a Texas Star Flour Mills, $1,500, y a The Wichita Mill Elevator Co., $1,427; en junto, $4,927.

2. Que el Sr. Navas se obligó a pagar esa deuda a cada uno de sus acreedores en cuatro plazos anuales a partir del 19 de Junio de 1913, con intereses al seis por ciento anual pagaderos con el plazo.

3. Que asimismo el Sr. Navas concertó con las razones sociales ejecutantes que éstas embarcaran mensualmente para

él cien sacos de harina cuyo conocimiento sería amparado por giros a treinta días vista a cargo del Sr. Navas.

4. Que para garantizar el pago de la deuda y de los giros, de los intereses y de los gastos, costas y honorarios de abogado, Doña Hortensia Balseiro Marín constituyó hipoteca a favor de las tres razones sociales ejecutantes, sin preferencias entre sí, sobre una finca rústica que debidamente se describe.

5. Que la hipoteca se constituyó por escritura pública y y se inscribió en el registro.

6. Que el Sr. Navas dejó de satisfacer el plazo de la deuda vencido el 19 de junio de 1914, que era de $500 en cuanto a Geo. P. Plant Milling Co., de $375 en cuanto a Texas Star Flour Mills, y de $356.75 en cuanto a The Wichita Mill Elevator Co., o sea, en junto, $1,231.75, y los intereses al seis por ciento anual de la deuda total de $4,917 desde junio 19, 1913, a junio 19, 1914, dejando de satisfacer también los siguientes giros vencidos procedentes de embarques de harina, a saber: a Geo. P. Plant Milling Co., con gastos de protesto, $482.90; a Texas Star Flour Mill Co., con gastos de protesto, $481, y a The Wichita Mill Elevator Co., $470, que forman un total de $1,333.90.

7. Que la hipoteca de que se trata está subsistente y la finca que está sujeta a ella no se ha trasmitido a tercera persona .

En el hecho octavo se especifican las cantidades adeudadas a cada de las ejecutantes y en el noveno se fijan los honorarios del abogado de los ejecutantes en $300.

Finalmente se invocan las razones legales por virtud de las cuales procede, a juicio de los ejecutantes, que la corte decrete el cobro de lo adeudado por la vía hipotecaria, y termina el escrito suplicando que se requiera a Manuel G. Navas y a su esposa Hortensia Balseiro Marín para que en el término de treinta días satisfagan las cantidades que se reclaman a cada una de las ejecutantes, apercibidos de que

si no lo hicieren se procederá a la venta en subasta pública de la finca hipotecada.

Los documentos que se acompañaron al escrito inicial fueron:

A. La escritura de hipoteca. Las cláusulas sexta, octava y novena, de dicha escritura otorgada entre otras personas por Doña Hortensia Balseiro de Navas, copiadas a la letra, dicen así:

"*Sexta.* Que el Señor Don Manuel G. Navas ha concertado con sus acreedores, y ahora de nuevo se obliga a ello, el pago de su deuda en la forma siguiente:

"Una cuarta parte de su respectivo débito a cada uno de sus tres acreedores, al vencimiento de cada año, y durante cuatro a contar desde el diez y nueve de junio de este año de mil novecientos trece, con sus intereses al 6 por ciento anual, pagados con el plazo, quedando en libertad el deudor de cancelar su deuda en cualquier fecha anterior a los plazos estipulados.

"*Octava.* Que para esta segunda parte del convenio o sea de la garantía para las remesas mensuales de harina de cada molino, en número de cien sacos y en aquella cuantía que no resultase satisfecha a virtud de los giros, el mismo Don Manuel ofreció a sus acreedores remitentes de la harina, garantía hipotecaria sobre la parcela que se ha segregado en una suma igual a mil y quinientos dollars, y todo ello durante los cuatro años convenidos.

"*Novena.* Que la Señora Doña Hortensia, identificada en absoluto con las obligaciones de su marido, en la forma que se ha detallado; de su expontáneo consentimiento hipoteca la finca segregada de veinte y cinco cuerdas con cuanto le sea perteneciente o se le incorpore, para responder de los cuatro mil novecientos veinte y siete dollars, de la deuda·de Navas y de los mil quinientos que se estipulan y fijan para responder de las remesas, no cubiertas de los cien sacos de harina por cada una de las casas acreedoras; y todo en favor de las tres, sin preferencias entre sí, debiendo además responder la finca de trescientos dollars por intereses y de setecientos para gastos y costas y derechos de abogados, con cuyo gravamen permanecerá el predio hasta que resulte su cancelación del registro de la propiedad."

B. Protesto por ante notario de un giro de $475 librado por Geo. P. Plant Milling Co. contra Manuel G. Navas, aceptado por éste el 2 de enero de 1914 y no pagado en el día de

su vencimiento, no obstante haber sido debidamente. requerido para ello.

C. Protesto por ante notario de un giro de $475 librado por Texas Star Flour Mills contra Manuel G. Navas, aceptado por éste el 9 de enero de 1914 y no pagado en el día de su vencimiento, no obstante haber sido debidamente requerido para ello.

D. Cuenta de la cual aparece que Manuel G. Navas debía a The Wichita Mill Elevator Co. en junio 19, 1913, $1,427, más $470 en noviembre 8, 1913, formando un total de $1,899. La cuenta está jurada ante un notario público del condado de Wichita, Texas.

E. Escrito del letrado Sarmiento solicitando del registrador de la propiedad cierta certificación que aparece expedida a continuación por dicho funcionario el 14 de octubre de 1914, creditiva de que la hipoteca de que se trata está inscrita en el registro en la forma que literalmente se transcribe; de que sobre dicha finca no pesa otra carga anterior o posterior que la hipoteca; de que la finca no ha sido trasmitida a tercero, y de que la hipoteca no ha sido cancelada ni total ni parcialmente.

Sometidos el escrito inicial y los documentos acompañados al mismo a la consideración de la Corte de Distrito de Arecibo, ésta, el 12 de noviembre de 1914, se negó a acceder a lo solicitado por las siguientes razones:

"No se aducen en el escrito inicial, hechos que determinen la exigibilidad del crédito hipotecario, como se requiere en el inciso tercero del artículo 169 del Reglamento Hipotecario; pues no se alega el vencimiento de dicho crédito, ni la existencia de estipulación alguna sobre darlo por vencido cuando dejare de pagarse algún plazo.

"Se omite en los hechos 2º., 3º. y 4º. del escrito, la alegación de que el término convenido para el pago de los créditos garantizados con hipoteca, es el de cuatro años a contar del 19 de julio de 1913.

"Según el artículo 1092 del Código Civil, 'las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando el día llegue.'

"El procedimiento ejecutivo hipotecario, según el artículo 130 de

la Ley Hipotecaria, será aplicable al caso en que deje de pagarse una parte del capital del crédito, o de los intereses cuyo pago deba hacerse en plazos diferentes, si venciere alguno de ellos sin cumplir el deudor su obligación, siempre que tal estipulación conste inscrita en el registro.

"Es así que en el caso presente, tal estipulación de que vencido un plazo y no pagado, el acreedor pueda ejercitar el procedimiento sumario hipotecario para su cobro, no consta ni inscrita en el registro ni tampoco en la escritura de constitución de la hipoteca, luego no procede hacer efectivo el cobro de un plazo por el procedimiento sumario hipotecario, hasta el total vencimiento de la obligación.

"Tenemos, además, que con el escrito inicial del procedimiento, no se acompañan los comprobantes de la personalidad de los acreedores, requisito exigido como esencial e indispensable, por el artículo 169 inciso primero, del Reglamento Hipotecario.

"Y por último, en el documento que se acompaña como para acreditar el protesto por 'The Wichita Mill Elevator Co.' del importe del giro vencido y del primer plazo de la cantidad adeudada y sus intereses, se hace constar por la suma de $1,897 dollars cantidad distinta de la de $912.37, que se consigna en el escrito inicial del procedimiento."

El 12 de diciembre de 1914 las ejecutantes archivaron su escrito de apelación, para el caso de que les fuera denegada cierta moción de reconsideración que presentaron y que en efecto fué declarada sin lugar por la corte de distrito por los mismos fundamentos de su resolución de 12 de noviembre y, además, "porque conteniendo la cláusula 6ª. del contrato hipotecario, la condición de que los demandantes, le embarcasen mensualmente al demandado cien sacos de harina, resulta un contrato bilateral en esta parte exigiendo la prueba previa de cumplimiento por parte de los demandantes."

El recurso de apelación interpuesto se tramitó debidamente ante este Tribunal Supremo, celebrándose la vista del mismo el 11 de marzo de 1915 y quedando desde entonces sometido a nuestra consideración y resolución.

La primera cuestión que debemos considerar es la relativa a la prueba de la personalidad de las sociedades ejecu-

tantes.   A nuestro juicio no existe la deficiencia anotada por el juez sentenciador.

El inciso primero del artículo 169 del Reglamento Hipotecario, invocado por el juez de distrito, prescribe que con el escrito inicial del procedimiento se han de presentar: *"Primero.* Los comprobantes de la personalidad, inclusos los que acrediten el mandato del procurador, cuando no gestione por sí el mismo acreedor o su legal representante."

En la actualidad no hay procuradores en Puerto Rico y, de acuerdo con la ley, artículo 51 del Código de Enjuiciamiento Civil, "la comparecencia ante las cortes deberá hacerse por medio de abogado legalmente autorizado para ejercer su profesión."

Así se hizo en el presente caso.   Las sociedades ejecutantes comparecieron directamente por medio de su abogado Antonio Sarmiento que está debidamente autorizado para ejercer su profesión en Puerto Rico y que de conformidad con los principios que informan nuestra legislación sobre la materia está considerado como un funcionario de la corte, y presentaron con su escrito inicial todos los documentos que exige el artículo 128 de la Ley Hipotecaria, entre los cuales figura la escritura de hipoteca, documento público en el que la personalidad de las sociedades acreedoras fué reconocida por el deudor y por la dueña de la finca hipotecada para garantir la deuda.

Veamos ahora si consta o no del escrito inicial y de los documentos acompañados al mismo, la exigibilidad de los créditos, y si en el caso de que conste puede seguirse o no para hacerlos efectivos el procedimiento sumarísimo que autoriza la Ley Hipotecaria.

Cuando se otorgó la escritura de hipoteca, el ejecutado Navas confesó deber a las sociedades ejecutantes $4,927, y se comprometió a pagarlos en cuatro plazos anuales a partir del 19 de junio de 1913.   Llegó el 19 de junio de 1914 y el deudor no pagó el plazo, y entonces, el 29 de octubre de 1914, los acreedores iniciaron este procedimiento para co-

brarlo.  A nuestro juicio, los términos del contrato son tan
claros con respecto a este particular que la exigibilidad del
pago del primer plazo de la deuda cuando el escrito inicial
fué presentado, es manifiesta.

También se convino en la escritura de hipoteca que las
sociedades ejecutantes remitirían al ejecutado Navas deter-
minado número de sacos de harina mensualmente y que co-
brarían su importe por medio de giros contra Navas paga-
deros a treinta días vista.  Se alega que cierta cantidad de sa-
cos de harina fué enviada a Navas, que Navas aceptó los giros
y que no los pagó dentro del plazo fijado.  El escrito inicial
se archivó después de vencida la deuda.  La aceptación de
los giros y la falta de pago de los mismos a su vencimiento,
constan de actas notariales de protesto firmadas por el pro-
pio deudor Navas.  Siendo ello así, de igual modo nos parece
enteramente clara la exigibilidad de la obligación en que
estaba el deudor Navas de pagar el importe de los giros.

Por virtud de la escritura a que nos hemos venido refi-
riendo, Doña Hortensia Balseiro y Marín, esposa del deu-
dor Navas, afianzó las operaciones realizadas por su esposo
con las sociedades ejecutantes, constituyendo al efecto una
hipoteca sobre una finca de su propiedad en los términos y
bajo las condiciones que hemos hecho constar anteriormente.
Si se examinan esos términos y condiciones, se verá que la
hipoteca, como es natural, guarda estrecha relación con las
obligaciones que garantiza en la forma en que dichas obliga-
ciones quedaron constituídas y que si ha de cumplir los fines
para los cuales fué otorgada, es necesario que sea ejecutable
en caso de falta de pago del primer plazo, o de cualquiera
de los subsiguientes, de la deuda, o de falta de pago de los
giros originados por las remesas de harinas dentro del plazo
convenido y fijado por las mismas partes contratantes.

El artículo 130 de la Ley Hipotecaria invocado por el
juez de distrito para fundar su conclusión de que en este
caso no puede ejecutarse la hipoteca hasta el total venci-
miento de la obligación, dice así:

"Lo dispuesto en los dos artículos precedentes será igualmente aplicable al caso en que deje de pagarse una parte del capital del crédito o de los intereses, cuyo pago deba hacerse en plazos diferentes, si venciera alguno de ellos sin cumplir el deudor 'su obligación y siempre que tal estipulación conste inscrita en el registro.''

A nuestro juicio el artículo transcrito, que hace referencia a los artículos 128 y 129 de la Ley Hipotecaria, por los cuales se fija el procedimiento sumarísimo especial para el cobro de créditos garantizados con hipotecas, no ha sido bien interpretado por la corte de distrito. En nuestra opinión el indicado artículo 130 se aplica al caso en que vencido un plazo, deba entenderse vencida la totalidad de la deuda, y para que esto sea así, es claro que debe estipularse expresamente e inscribirse la estipulación en el registro como requiere la ley. Pero lo dispuesto en dicho artículo no impide que pueda cobrarse por la vía sumarísima el plazo vencido inmediatamente después de que lo sea, tal como prescribe el artículo 168 del Reglamento hipotecario que dice:

"Vencido, en todo o en parte, un crédito hipotecario, o sus intereses, el procedimiento para su cobro, en cuanto se dirija tan sólo contra los bienes gravados con la hipoteca, se ajustará a las disposiciones de los artículos 128 y siguientes de la ley y a las de este reglamento, completadas en la forma que el mismo señala por las de la Ley de Enjuiciamiento Civil de Cuba, Puerto Rico o Filipinas respectivamente.''

En cuanto a los giros, el caso es aun más claro, pues las obligaciones que representan estaban vencidas totalmente por el transcurso del plazo en que debían ser satisfechas.

El último de los fundamentos de la resolución recurrida nos parece bien establecido. Para que pueda despacharse ejecución de acuerdo con la letra y el espíritu de la Ley Hipotecaria, es necesario que conste en forma auténtica y fehaciente la certeza de la deuda. En este caso la parte de la deuda de $4927 garantizada con hipoteca que debía satisfacerse el 19 de junio de 1913 constaba en un documento público inscrito en el registro, hallándose vigente la inscrip-

ción según certificación del registrador expedida quince días antes de archivarse el escrito inicial del procedimiento. Las deudas procedentes de los giros librados por las ejecutantes Geo. P. Plant Milling Co. y Texas Star Flour Mills, constaban por el documento público de que se ha hecho referencia y además por los mismos giros aceptados por el ejecutado Navas y debidamente protestados por ante un notario público. Mas la deuda procedente del giro librado por la otra ejecutante The Wichita Mill Elevator Co. no consta en la forma auténtica y fehaciente que la ley requiere. La cuenta rendida es confusa, necesita de explicaciones, y aunque está jurada, no aparece aceptada por el ejecutado Navas.

Examinados todos los fundamentos de la resolución recurrida, procederemos al estudio del motivo adicional expresado por el juez de distrito para negarse a reconsiderar su resolución de 12 de diciembre de 1914. En efecto introduce alguna confusión la naturaleza del contrato sobre embarque de harinas por parte de las ejecutantes y pago de las mismas por parte del ejecutado Navas. Generalmente las hipotecas se constituyen para garantizar deudas previamente existentes o préstamos de dinero, pero esto no quiere decir que no puedan otorgarse para garantizar contratos como el que estamos considerando. Es lo cierto que se otorgó la hipoteca, que esa fué la voluntad de las partes y no vemos obstáculo alguno para que pueda librarse la ejecución si la exigibilidad de la deuda consta en la forma auténtica y fehaciente que en el caso de los giros de las ejecutantes Geo. P. Plant Milling Co. y Texas Star Flour Mills, esto es, por medio de giros aceptados por el ejecutado y debidamente protestados. En la misma Ley Hipotecaria se encuentran prescripciones regulando las hipotecas constituídas para asegurar obligaciones futuras. Véanse los artículos 142 y 143 de la Ley Hipotecaria y los Comentarios de Galindo, volumen 3, pág. 353 y siguientes, de la 4ª. edición.

Por virtud de todo lo expuesto, opinamos que debe revocarse la resolución recurrida y ordenarse al Juez de Distrito

de Arecibo que proceda a decretar el requerimiento solici-
tado con excepción de la partida de $470 reclamada por la
ejecutante The Wichita Mill Elevator Co., por concepto de
giros procedentes de remesas de harinas.

> *Revocada la resolución apelada, ordenándose*
> *a la corte inferior que proceda a decretar*
> *el requerimiento solicitado.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados Wolf, Aldrey y Hutchison.