ASOCIACIÓN DE PADRES CAPUCHINOS DE PENNSYLVANIA EN PUERTO RICO, peticionaria, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. PABLO BERGA, JUEZ, demandada.

No. 871.—*Sometido:* Febrero 13, 1933. *Resuelto:* Marzo 16, 1933.

*J. Henri Brown, Edmund Block, C. Ruiz Nazario* y *G. E. González,* abogados de la peticionaria; *M. Muñoz Morales* y *De la Torre & Ramírez,* abogados del demandante en el ejecutivo sumario hipotecario.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

En 29 de junio de 1932 M. L. de Soto, quien alega ser mayor de edad, comerciante, soltero y vecino de Santo Domingo, República Dominicana, inició procedimiento ejecutivo hipotecario contra María Rivera Quiles, con intervención de la Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico. La corte dictó auto de requerimiento para que la demandada María Rivera Quiles pagara al demandante, en el término de treinta días, la cantidad de $22,033.34, y ordenando que se notificara a la Asociación de Padres Capuchinos de Pennsylvania para que procediera en la forma que entendiera convenir mejor a sus intereses. La referida Asociación de Padres Capuchinos, representada por sus abogados, presentó moción a la corte solicitando una orden para que los abogados de M. L. de Soto expusiesen las razones que tuviesen para no ser obligados a descubrir los nombres de bautismo y apellidos del demandante M. L. de Soto, la calle y número de su residencia y casa de comercio en la ciudad de Santo Domingo, y para que además produjesen el mandato o autorización que tengan dichos abogados para iniciar y gestionar el procedimiento hipotecario. En esta moción alegó la peticionaria que había hecho investigaciones por conducto de sus agentes y abogados para averiguar la existencia del demandante en el procedimiento ejecutivo, resultando de dichas investigaciones que no hay ningún M. L. de Soto conocido en el comercio de la ciudad de Santo Domingo, y que no

se había podido encontrar persona conocida con dicho nombre en dicha ciudad; también alegó la aquí peticionaria en dicha moción haber recibido información de que el mencionado procedimiento está realmente gestionado por Manuel Tous Soto, quien a su vez es apoderado de la demandada María Rivera Quiles, y que dicho Manuel Tous Soto era el verdadero abogado en dicho caso, firmando el escrito inicial los abogados De la Torre y Ramírez porque dicho Manuel Tous Soto ya no puede ejercer su profesión en Puerto Rico; asimismo alegó la peticionaria que tenía razones para creer que si existía tal persona M. L. de Soto, dicho M. L. de Soto no ha comprado realmente o pagado cantidad alguna por dicho pagaré, sino que es un cesionario completamente ficticio de que se han servido María Rivera Quiles y Manuel Tous Soto para consumar una conspiración con el fin de defraudar a la peticionaria del inmueble objeto de dicho procedimiento ejecutivo; y que la peticionaria, para poder presentar sus defensas en dicho procedimiento en debida forma, necesitaba obtener datos respecto al supuesto demandante y también necesitaba enterarse si realmente los abogados que firmaban el escrito inicial, o sean los Sres. de la Torre y Ramírez, tenían autorización o mandato para iniciar y gestionar tal procedimiento y si conocen a dicho M. L. de Soto. Con dicha moción se acompañó una declaración jurada de Henri Brown, como abogado de la aquí peticionaria, en la cual se hizo constar la existencia de un pleito entre la aquí peticionaria, como demandante, y María Rivera Quiles, Manuel Tous Soto, Franciscan Educational Conference y Joaquín Ramón, como demandados, cuyo pleito lleva el No. 16367, civil, de la Corte de Distrito de San Juan, y en el cual se alega la conspiración de dichos María Rivera Quiles, Manuel Tous Soto, Franciscan Educational Conference y Joaquín Ramón para despojar a la aquí peticionaria del mismo inmueble objeto de dicho procedimiento ejecutivo hipotecario, y que dichos demandados realizaron actos para llevar a efecto tal propósito, entre ellos la venta fraudulenta en ejecución de dicho inmue-

ble y adjudicación del mismo a María Rivera Quiles, y el otorgamiento por Manuel Tous Soto como apoderado de María Rivera Quiles, de varios pagarés hipotecarios al portador, garantizados con hipoteca sobre dicho inmueble, uno de los cuales, o sea el montante a $20,000, se pretende cobrar mediante el referido procedimiento ejecutivo. También expresa el Sr. Brown en dicha declaración jurada haber practicado gestiones con personas y entidades en la ciudad de Santo Domingo para averiguar si realmente existe la persona nombrada M. L. de Soto, que figura como demandante en dicho procedimiento ejecutivo hipotecario, y cuáles son la residencia y condiciones personales del mismo, no habiendo dicho abogado podido encontrar a persona alguna que conozca a M. L. de Soto, o comerciante alguno de tal nombre residente en la ciudad de Santo Domingo; también se hace constar en dicha declaración que el Márshal de la Corte de Distrito de San Juan, Sr. M. Náter Girona, informó al Sr. Brown que los diligenciamientos del mandamiento y del requerimiento de pago fueron preparados por Manuel Tous Soto, quien personalmente dió al márshal los datos necesarios para diligenciar dicho mandamiento; declarando finalmente el Sr. Brown que cree verdaderamente que el supuesto M. L. de Soto es persona ficticia, o que, si realmente existe tal persona residente en la ciudad de Santo Domingo, no ha adquirido por valor el pagaré hipotecario por cuyo cobro se inició el referido procedimiento ejecutivo, y que el verdadero dueño de dicho pagaré y demandante, es Manuel Tous Soto.

Los abogados que comparecen a nombre de Manuel L. de Soto se opusieron a la moción presentada por la peticionaria basándose en que no tenía derecho a comparecer de acuerdo con las disposiciones de la Ley Hipotecaria. En cuanto al mandato que puedan tener los abogados para representar a M. L. de Soto, se limitaron a decir que la Asociación de Padres Capuchinos carece de acción para solicitar la justificación de los poderes de los letrados del ejecutante y citan además en su abono los casos de *Claudio* v. *Palacios et al.,* 29

D.P.R. 825, y *Geo. P. Plant Milling Co. et al.* v. *Navas et al.*, 22 D.P.R. 273.

■■ Los abogados tienen a su favor la presunción de que actúan en representación de las personas a cuyo nombre comparecen. Cuando se impugna esta representación, dice Weeks, la parte que sostiene la negativa tiene el peso de la prueba para rebatir la presunción; pero, añade el mismo autor que a pesar de esto dicha parte, desde el primer momento, puede obligar al abogado a exhibir su mandato, demostrando justa causa. La parte que invoca el ejercicio de este poder debe exponer hechos que demuestren o tiendan a demostrar que el abogado no tiene el mandato que se atribuye, explicando las razones que le inducen a creer que dicho abogado no está autorizado a comparecer. De lo contrario debe prevalecer la evidencia prima facie, o sea la presunción derivada de la licencia para ejercer la profesión y del hecho de la comparecencia. *Weeks on Attorney at Law,* secciones 196, 198 y 200.

En el caso de *Clark* v. *Willett*, 35 Cal. 534, se alegó por una persona que aparecía como demandante, que el abogado había actuado sin su autorización. Resolviendo esta cuestión dijo la Corte Suprema de California:

"... Nosotros no tenemos duda alguna acerca de los poderes de la corte. Los abogados son funcionarios de la corte, y responsables a ella por la debida ejecución de sus deberes profesionales. Ellos comparecen y participan de sus procedimientos solamente en virtud de la licencia de la corte, y si ellos tratan de comparecer sin autoridad de la parte a quien intentan representar, el acto es un abuso de la licencia, y la corte, a petición del supuesto cliente, tiene poder para inquirir y corregir sumariamente. De lo contrario podría contaminarse la fuente de la justicia misma, y un permiso para agitar sus aguas se convertiría en un permiso para profanarla."

En *West* v. *Houston,* 3 Harrington (Del.) 15, el Juez Bayard, quien emitió la opinión del tribunal, se expresó así:

"En nuestra práctica, por lo tanto, la corte debe esperar a que se establezcan algunas razones, bien sea por declaración jurada o de otra manera, antes de requerir al abogado del demandante a producir un mandato escrito u otra prueba de su autoridad a instancias

del demandado. Indudablemente, cuando se sugiere fraude, y especialmente si se trata de un menor en peligro de ser perjudicado por un procedimiento no autorizado, nosotros inquiriríamos acerca de la autoridad del abogado, para la protección del guardián, de su pupilo o del demandado; y si el caso lo requiriera, aplicaríamos otro remedio además de ordenar la eliminación de la demanda.''

De una nota puesta al pie del caso de *Doe* v. *Abbott,* 126 Am. State Reports 34, copiamos lo siguiente:

''Aunque se admite generalmente que un abogado que comparece en corte está investido de autoridad para representar a la persona a cuyo nombre se supone actúa, sin embargo puede investigarse su autoridad: Standefee v. Dowlin, Fed. Cas. No. 13, 284 *a,* Hemp. 209; y cuando su autoridad está en disputa, puede exigírsele que la pruebe: Prentiss v. Kelley, 41 Me. 436; McKiernan v. Patrick, 4 How. (Miss.) 333; Low v. Settle, 22 W. Va. 387. La corte puede, a virtud de la facultad general que ejerce sobre sus funcionarios, ordenar al letrado de la parte demandante que pruebe su autoridad para incoar el proceso: Board of Commissioners v. Purdy, 36 Barb. 266; King of Spain v. Oliver, 2 Wash. C. C. 429, Fed. Cas. No. 7814; Allen v. Green, 1 Bail. 448. O la corte puede ordenar a un letrado que muestre su autoridad para demandar cuandoquiera que los derechos de la parte demandada así lo exijan: Vincent v. Vanderbilt, 10 How. Pr. 324; Ninety-nine Plaintiffs v. Vanderbilt, 4 Duer, 632, 1 Abb. Pr. 193. Un abogado de la corte generalmente puede demandar o defender un litigio sin presentar prueba de su autoridad, mas la corte puede, en circunstancias en que los fines de la justicia así lo exijan, ordenarle que presente su nombramiento o que pruebe su autoridad: State v. Houston, 3 Harr. 15. Sin embargo deben primeramente presentarse hechos o circunstancias que hagan surgir la presunción de que no está autorizado para comparecer en corte antes de que su autoridad pueda legalmente ser investigada: Cartwell v. Menifee, 2 Ark. 356; pero si el derecho que tiene un abogado para comparecer en corte es impugnado por fundamentos evidentemente buenos, es el deber de la corte exigirle que presente su autoridad: Colorado Coal etc. Co. v. Carpita, 6 Colo. App. 248, 40 Pac. 248.

''Siempre que haya motivo fundado para suponer que un abogado ha incoado un litigio sin permiso del demandante, debe exigírsele que presente prueba satisfactoria de su autoridad: Belt v. Wilson's Admr., 6 J. J. March 495, 22 Am. Dec. 88. O si se instituye un pleito a beneficio de otra persona en cuyo derecho a demandar existe

un defecto evidente, el letrado debe presentar su autoridad: McAlexander v. Wright, 3 T. B. Mon. 189, 16 Am. Dec. 93. Pero la presunción de que un abogado tiene autoridad para comparecer a nombre de la parte que él alega representar puede ser destruída solamente por la corte al exigirle al letrado que pruebe la autoridad dádale por la persona a cuyo favor comparece y que revele el nombre de la persona que lo empleó: Planters' etc. Fire Ass'n. v. De Loach, 113 Ga. 802, 39 S. E. 466.''

En el caso de *Bell* v. *Farewell,* 59 N. E. 955, la Corte Suprema de Illinois se expresó en los siguientes términos:

"Un letrado no está autorizado para iniciar un pleito a nombre de otra persona a menos que efectivamente haya sido empleado para representar a esa parte ante las cortes. Frye's Adm'rs. v. Calhoun Co., 14 Ill. 132; Miller v. Metzger, 16 Ill. 390; Reed v. Curry, 35 Ill. 536; Town of Kankakee v. Kankakee & I. R. Co., 115 Ill. 88, 3 N. E. 741. En el caso de Frye's Adm'rs. v. Calhoun Co., supra dijimos: 'Un abogado no está facultado para incoar un litigio a nombre de otra persona sin antes recibir autoridad para ese fin. Su posición le da derecho a comparecer a nombre de un litigante al ser contratado, mas no para intervenir en un caso en que sus servicios no han sido solicitados. De conformidad con la práctica en Inglaterra un abogado no está autorizado para iniciar o defender un litigio a menos que tenga un nombramiento escrito hecho por una de las partes. El nombramiento le faculta para actuar a nombre del litigante, y es radicado ante la corte en que el litigio está pendiente. En nuestro país, generalmente, no se exige tal nombramiento, sino que puede nombrarse un letrado verbalmente. Empero, aquí es tan necesario como en Inglaterra que el abogado esté autorizado por la persona a cuyo nombre él comparece. La única diferencia en la práctica se refiere a la forma de hacer el nombramiento. El abogado debe haber sido efectivamente empleado para tal fin antes de que pueda representar a una de las partes ante la corte. La relación de abogado y cliente debe existir entre ellos. Esa relación no puede ser creada por el abogado solamente. El litigante tiene derecho a elegir su propio abogado.' Si un abogado instituye un procedimiento a nombre de otra persona sin su autoridad, es el deber de la corte desestimar el mismo a moción de la parte demandada. En Frye's Adm'rs. v. Calhoun Co., supra, se dijo: 'Si un letrado inicia un procedimiento a nombre de otra persona, la presunción legal es que ha sido contratado para tal fin. Sólo cuando su derecho a representar

al demandante está en tela de juicio y cuando la presunción de que ha sido contratado por éste es impugnada, es que puede exigírsele que presente prueba de su autoridad; mas en tal caso, si deja de producir prueba de su autoridad para iniciar el litigio, el mismo debe ser desestimado sumariamente por la corte.' Y en el caso de Town of Kankakee v. Kankakee & 1. R. Co., supra, la corte dijo (pág. 92, 115 Ill., y pág. 743, 3 N. E.) : 'El letrado suscita la cuestión de que la corte cometió error al desestimar el caso, aun admitiendo que el litigio fué iniciado sin autoridad legal para ello, toda vez que la moción fué presentada solamente por uno de los demandados; que la resolución desestimando el procedimiento debió concederse solamente a favor de la parte que presentó la moción. Esto no es sostenible. La corte pudo, *sua sponte*, sin que se le presentara moción alguna, haber desestimado el litigio en cualquier momento en que se llamara su atención hacia el hecho de que el litigio se proseguía sin autorización legal.' La prueba presentada por la parte demandada es amplia y la corte estuvo plenamente justificada al desestimar el litigio, a menos que los letrados del demandante probaran que tal sentencia había sido cedida, que ellos representaban al cesionario o beneficiario, y que el litigio se incoaba a nombre de tal cesionario o beneficiario.''

De la opinión emitida por la Corte Suprema de los Estados Unidos en el caso de *Pueblo de Santa Rosa* v. *Fall,* 273 U. S. 319, copiamos lo siguiente:

"La cuestión relativa a la autoridad del letrado fué suscitada mediante moción para desestimar archivada con la contestación. Se celebró una vista sobre la moción, pero la corte sentenciadora, a iniciativa propia, acordó demorar su decisión hasta que se celebrara una vista final del caso sobre sus méritos, orden que claramente estaba dentro de su discreción. No es importante resolver si como cuestión de práctica la impugnación a la autoridad del letrado fué oportunamente planteada, pues de todos modos la corte sentenciadora, o este tribunal tiene facultad, en cualquier estado de los procedimientos, para exigir a un letrado, que es uno de sus funcionarios, que demuestre su autoridad para comparecer ante la corte. En el caso del Rey de España v. Oliver, 2 Wash. C. C. 429, 430, el Juez Asociado Sr. Washington, actuando en la Corte de Circuito, dijo: '. . . . sería extraño que una corte cuyo derecho y deber es supervisar la conducta de sus funcionarios, no tuviera la facultad de inquirir a virtud de qué autoridad un letrado de dicha corte trata de demandar o de defender un pleito a nombre de otro—ora sea tal per-

sona real 'o ficticia—o si tal procedimiento es utilizado con un fin vejaminoso o fraudulento, en vez de aquél para el cual fué iniciado. La única cuestión puede referirse al momento y a la forma de exigir la autorización, así como al remedio que debe adoptarse en el caso, todo lo cual está dentro de la discreción de la corte.' ''

El ejercicio de la profesión constituye para el abogado un privilegio extraordinario que debe ejercitar escrupulosamente, cumpliendo a conciencia las responsabilidades que asume para con la corte y para con sus clientes. Es a través del abogado que la corte se comunica con los litigantes y no son pocas las ocasiones en que deberes íntimos y delicados son confiados al abogado para su ejecución. No en vano se le considera como un funcionario de la corte. Su deber es evitar sorpresas y errores en los casos en que comparece y cooperar a una justa y correcta determinación del derecho y de los hechos. La conducta de sus funcionarios no puede ser mirada con indiferencia por un tribunal de justicia. Una corte tiene que estar interesada en la pureza de sus procedimientos, en vigilar la conducta de sus funcionarios, en facilitar la administración de la justicia y en impedir que se realicen actos que puedan subvertir los fines de la misma. Ciertamente los abogados tienen a su favor la presunción de actuar en representación de las personas a cuyo nombre comparecen. No quiere decir esto, sin embargo, que al amparo de esta presunción puedan iniciar y tramitar un pleito hasta su terminación, sin que la corte esté autorizada, a petición de parte generalmente, o *motu proprio* en casos excepcionales, cuando lo demanden los intereses de la justicia, para requerir al abogado a que demuestre los poderes que tiene para comparecer en representación de sus clientes. Cuando se exponen bajo juramento hechos que demuestran o tienden a demostrar que el abogado no está autorizado por su presunto cliente para comparecer, la corte está justificada en provocar una exhibición de poderes. Esta autoridad de la corte lo mismo puede ejercitarse en procedimientos ordinarios que en aquellos de carácter sumario. La misma razón existe para ejercer esta

autoridad en un procedimiento que en otro, aunque apurando el argumento bien pudiera decirse que su ejercicio está aún más justificado en un procedimiento ejecutivo hipotecario donde no existen otras defensas que las que se determinan en el artículo 175 del Reglamento a la Ley Hipotecaria. Se alega que el procedimiento sumario únicamente puede impugnarse en los casos que se especifican en el reglamento. Deseamos hacer constar que la autoridad de la corte para exigir de un abogado que presente sus poderes no puede ser afectada por una disposición legal que impida la suspensión de un procedimiento determinado. Debemos añadir que la corte no ejerce su autoridad para suspender el procedimiento, sino para saber si realmente ha adquirido jurisdicción sobre una parte debidamente representada por su abogado. Por otra parte, el procedimiento puede continuar sus trámites mientras se lleva a cabo la investigación. Después que se ha dictado la orden de requerimiento hasta que se anuncia la subasta transcurren treinta días, y luego queda todavía el período que fija la ley hasta que se lleva a cabo dicha subasta. La parte interesada debe ser diligente y no acudir a la corte demasiado tarde. En el presente caso la peticionaria fué notificada del requerimiento en 2 de julio de 1932, y en 30 de julio presentó la moción que ha dado origen a esta solicitud de *certiorari.* Aunque desde la notificación del requerimiento hasta la radicación de la moción transcurrieron veintiocho días, la tardanza de la peticionaria en acudir a la corte puede explicarse si se tienen en cuenta las gestiones que se dice fueron practicadas por el abogado Henri Brown en Santo Domingo para averiguar el paradero de M. L. de Soto. Y aun así, el procedimiento ejecutivo no se hubiera suspendido si los abogados, a requerimiento de la corte, hubiesen exhibido a satisfacción de la misma sus poderes para representar a M. L. de Soto. Si se trata de una persona que no existe, o si existiendo no ha conferido poderes para ser representada, entonces el procedimiento resulta claramente nulo *per se,* por inexistencia de parte o ausencia de representación, y nada se

suspende si se decreta su archivo, porque no puede suspenderse lo que nunca tuvo vida legal.

■ ■ Durante la consideración de este asunto en el seno del Tribunal, surgió a discusión la naturaleza del error atribuído a la corte inferior a fin de determinar si había habido un error de procedimiento que justificase la intervención de esta Corte mediante un recurso de *certiorari*. Respondiendo a la moción presentada por la peticionaria, la corte inferior dictó la siguiente resolución:

"Vista la moción de la demandada Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico, y la declaración jurada en apoyo de la misma, por la presente se ordena a los abogados Francisco de la Torre y Ramírez, que comparezcan en la sala de esta Corte, Sección Segunda, el día 1 de agosto de 1932, a las 9 : 30 A. M., para mostrar causa, si alguna tuvieren, por qué no deben ser requeridos para informar por escrito los nombres de bautismo y apellido de M. L. de Soto, quien aparece como demandante en esta acción, el número de la casa y la calle en la ciudad de Santo Domingo, República Dominicana, en donde tiene su residencia dicho M. L. de Soto, y el nombre de la calle en dicha ciudad donde tiene dicho M. L. de Soto su casa de comercio, y para presentar a la Corte el mandato o autorización, si alguno tuvieren, para iniciar y gestionar este procedimiento a nombre de dicho M. L. de Soto."

A esta orden, que se limita exclusivamente a requerir a los abogados para que expresen las razones que tengan para no exhibir sus poderes y dar a conocer detalladamente las señas de M. L. de Soto, contestaron dichos abogados en un extenso, alegato, arguyendo que la peticionaria no tiene derecho a comparecer en el procedimiento ejecutivo hipotecario y mencionando, en cuanto a la exhibición de poderes, sin argumento alguno, los casos de *Claudio* v. *Palacios et al.*, 29 D.P.R. 825, y *Geo. P. Plant Milling Co. et al.* v. *Navas*, 22 D.P.R. 273.

No se expresó ninguna otra razón por los abogados para no producir el mandato ni dar a conocer las señas de la persona a nombre de quien comparecen. La corte inferior, sin haberse practicado prueba alguna, declara que el *affidavit* del Sr. Brown que sirvió de base a la orden para mostrar causa

es de referencia y no destruye la presunción de la existencia de M. L. de Soto, quien comparece ante la corte representado por sus abogados. De modo que la corte inferior entiende que es necesario destruir la presunción de la existencia de M. L. de Soto para que pueda requerirse de sus abogados una exhibición de poderes. Y preguntamos nosotros ¿cómo puede la peticionaria probar la no existencia de M. L. de Soto, asumiendo que en realidad se trata de una persona ficticia? La única prueba accesible es la que se basa en pesquisas infructuosas practicadas en la vecindad donde tal persona, si existiera, debía ser conocida. Se alegó en el escrito inicial que M. L. de Soto residía en Santo Domingo, y allí fué la peticionaria a procurarse la información que ha suministrado a la corte. El Sr. Brown jura que ha recibido esta información y que cree que M. L. de Soto es una persona ficticia. Esta opinión se basa en las gestiones que se llevaron a cabo y en el resultado infructuoso de las mismas. A pesar de estas pesquisas no se han tenido noticias acerca de M. L. de Soto. Aparte de estas consideraciones, como muy bien dice la Corte Suprema de Missouri en el caso de *Munhall* v. *Mitchell*, 178 Mis. 500, la audiencia de una moción de esta naturaleza tiene más bien el carácter de una investigación y no necesita ser conducida conforme a las estrictas reglas de la evidencia.

En el caso de *Thomas* v. *State*, 14 Pac. (2d) 354, resuelto en septiembre de 1932, se alegó que el testimonio del submárshal creditivo de que había practicado pesquisas para encontrar a V. F. Smith cerca de ciertas personas de las cuales no pudo obtener información alguna, era evidencia de referencia. El estado ofreció este testimonio para demostrar que se habían practicado pesquisas para localizar a dicho Sr. Smith y que habían sido infructuosas. Argumentando sobre esta prueba dice la Corte Suprema de Oklahoma:

"Hay ciertas materias que no pueden ser siempre probadas por testimonio positivo y en cierto modo ésta es la prueba de una negativa. En este caso el Estado procura probar que V. F. Smith, de

quien el acusado dice que ha recibido el cheque en cuestión, es un mito, una persona ficticia. ¿Cómo puede la no existencia de tal persona ser probada? El Estado no puede producir un testigo que testifique de su propio conocimiento que esa persona no existió. Lo más que puede probar es que los testigos estuvieron en una posición de conocer a la gente de la comunidad y que esta gente no sabía de tal persona; esto es, que ellos no tenían conocimiento de dicha persona, y que nadie les había hablado de ella como existente en la comunidad. Este es realmente el propósito y efecto del testimonio aquí. La sustancia del testimonio del testigo es que en su opinión no existe tal persona; su opinión está basada en el hecho de que él practicó pesquisas en la vecindad donde tal persona, si existiera, debía ser conocida, y que no ha podido tener noticias de la misma. El testimonio de la no existencia de una persona determinada es una cuestión de opinión, que puede estar basada en lo que usualmente se llama referencia. Tal testimonio no es, estrictamente hablando, evidencia de referencia, sino circunstancial, tendente a probar que dicha persona no tiene existencia en realidad.''

Véase también la reseña sobre casos recientes contenida en el Número 4 del Volumen XLVI de Harvard Law Review, correspondiente al mes de febrero de 1933, páginas 715 y 716.

El caso de Oklahoma es muy parecido al nuestro en lo que se refiere a la prueba de las pesquisas practicadas para localizar a la persona que se buscaba. Allí declaró el submárshal que se había tratado de encontrar al Sr. Smith y que con este propósito se había acercado a ciertas personas, de las cuales no pudo obtener información alguna con respecto al referido Sr. Smith. Aquí el Sr. Brown declara que se ha valido de ciertas personas de las cuales no ha podido averiguar nada con respecto al Sr. M. L. de Soto. Allí y aquí se ha producido la única prueba accesible en un caso de esta naturaleza. Allí se admitió esta evidencia en una causa criminal para demostrar la no existencia de una persona de quien el apelante, acusado de falsificación, decía que había recibido un cheque; aquí se ofreció una declaración jurada para pedir exhibición de poderes a los abogados que aparecen representando al mencionado M. L. de Soto. La corte inferior descarta la evidencia, y rehuye actuar prácticamente, fundada en bases erró-

neas. Sostener que es necesario destruir la presunción de la existencia de una persona para poder actuar en un caso como el presente, basando tal conclusión en que la prueba ofrecida es de referencia, constituye a nuestro juicio un error de procedimiento que debe ser rápidamente corregido. La corte inferior dicta una orden para demostrar causa y se abstiene de hacer cumplir dicha orden, sin que se le haya demostrado causa. Es decir, aun asumiendo la verdad del testimonio de Brown, declara la corte inferior que dicho testimonio, por ser de referencia, no basta para justificar una orden de exhibición de poderes. En lo que respecta a la apreciación de la prueba documental, esta corte está en las mismas condiciones que la corte inferior para juzgarla; pero en este caso no se trata de la apreciación acertada o errónea de una prueba, sino de su eliminación por considerarla de referencia. Si la corte inferior espera para actuar en un caso como el presente a que se destruya la presunción de la existencia de M. L. de Soto, y si es verdad, como se cree por la peticionaria, que se trata de una persona ficticia, puede asegurarse que jamás se producirá prueba positiva y directa de su no existencia y que, si se exige su presentación, la corte no tendría nunca oportunidad de ejercitar su autoridad, puesto que es materialmente imposible encontrar dicha prueba.

Opinamos que se han expuesto bajo juramento hechos y razones que justifican una exhibición de poderes de parte de los abogados que aparecen representando a M. L. de Soto. La peticionaria cree que se trata de una persona ficticia, y ofrece datos a la corte acerca del resultado infructuoso de sus gestiones para averiguar la existencia o el paradero del referido sujeto. En presencia de estas alegaciones natural es que la corte trate de averiguar si tiene ante sí a una parte que invoca su jurisdicción para obtener justicia, o si se utiliza el nombre de una persona que no existe para provocar, a través del tribunal, una subversión de esa misma justicia. Cuando se exponen a la corte hechos de los cuales surge la posibilidad de un fraude ¿debe la corte cruzarse de brazos

y abstenerse de actuar, basándose en que si el fraude llega a consumarse la parte interesada puede obtener reparación en un juicio ordinario? ¿No es más justo y correcto que la corte adopte las medidas que estén a su alcance para evitar que las posibilidades puedan convertirse en realidades e impedir que se utilicen su jurisdicción y poderes para fines ilícitos no autorizados por la ley? Al actuar así la corte no hace otra cosa que adoptar una medida preventiva en bien de la justicia. Si las alegaciones que inspiran su actuación resultan infundadas, las molestias que puedan haberse irrogado al abogado requerido quedan compensadas con su justificación, saliendo ileso de la prueba a que se le somete, y la restitución de la tranquilidad a la conciencia judicial al esfumarse las sombras proyectadas sobre el procedimiento.

Como ya hemos dicho antes, la corte puede, a petición de parte o *sua sponte,* cuando lo requieran los fines de la justicia, solicitar que un abogado exhiba los poderes con que comparece a nombre de otra persona. No consideramos a la peticionaria completamente extraña al procedimiento. Después de leer las alegaciones es muy difícil llegar a la conclusión de que no tiene interés en el inmueble que se intenta ejecutar por el procedimiento sumario y sobre el cual existe un pleito promovido por dicha peticionaria. En virtud de estas alegaciones ha llegado la corte a conocimiento de hechos que justifican una exhibición de poderes de parte de los abogados que iniciaron a nombre de M. L. de Soto el procedimiento ejecutivo. La corte sabe que hay un abogado que dice bajo juramento que ha practicado pesquisas infructuosas para averiguar la existencia y el paradero de M. L. de Soto y que cree que se trata de una persona ficticia, y sabe la corte además que en el escrito inicial del procedimiento ejecutivo M. L. de Soto aparece siendo comerciante, soltero y vecino de Santo Domingo, y que ahora el referido M. L. de Soto aparece residiendo de manera accidental, en condición transitoria, en la Hacienda Mesa Chica, de la propiedad de don Epifanio Zubieta, en el término de Patlanta, estado de Veracruz,

Méjico. La corte puede, en cualquier tiempo, deshacerse de un procedimiento que resulta inexistente por haber sido incoado sin autoridad. Sin parte promovente no puede haber acción o procedimiento, y una corte no puede carecer de autoridad para averiguar, cuando surjan razones que lo justifiquen, si es o no ficticia la persona que comparece ante ella promoviendo un procedimiento o acción.

*Por las razones expuestas, debe anularse la resolución dictada por la Corte de Distrito de San Juan en 3 de diciembre de 1932, y devolverse el caso a dicha corte para procedimientos ulteriores de acuerdo con los términos de esta opinión.*

Los Jueces Asociados Señores Wolf y Aldrey, disintieron.*