ENRIQUE CATONI y su esposa ROSA M. MARTÍN y otros, demandantes y apelados, *v.* ANDRÉS Y LUCIANA AYBAR MUÑOZ, demandados y apelantes.

Núm. 8451.—*Sometido:* Junio 17, 1942. *Resuelto:* Julio 7, 1942.

*Andrés y Luciana Aybar Muñoz,* por su propio derecho; *Manuel Rivera de la Vega,* abogado de los apelados.

E<small>L</small> J<small>UEZ</small> A<small>SOCIADO</small> S<small>EÑOR</small> T<small>ODD</small>, J<small>R</small>., emitió la opinión del tribunal.

Desde hace veinticuatro años, Andrés y Luciana Aybar, en una serie de pleitos han alegado, sin poder probarlo, que son los únicos herederos de Carmen, Manuela y María Carolina Smith Aybar y como tales, dueños de la casa número 10 de la calle San José de San Juan. Para una relación completa y detallada de los hechos envueltos en dichas acciones véase *Aybar* v. *Vara,* 56 D.P.R. 430 en el que, al desestimarse por frívolo el último recurso interpuesto por los Aybar, se dijo:

". . . Los apelantes han sostenido en todo momento que un prominente letrado de San Juan se inventó a las demandadas para que les defraudaran, o hizo que estas cuatro personas reclamaran una herencia que legalmente pertenece a los demandantes. También sostienen que todos los testamentos, poderes y certificaciones de sentencias de los tribunales españoles en varios procedimientos de testamentaría, que en distintas ocasiones se han presentado por el agente de las demandadas, son falsificados.

"Los apelantes han tenido amplias oportunidades para probar las imputaciones de fraude y nunca han tenido éxito. Continuamente han planteado las mismas cuestiones que siempre han sido resueltas en su contra. No vemos razón válida alguna por la cual no deba desestimarse la apelación."

No había aún llegado el mandato de esta corte en dicho caso a la Corte de Distrito de San Juan que tiene fecha de mayo 6, 1940, cuando Andrés y Luciana Aybar Muñoz radicaron una nueva acción bajo el número 34261 contra los mismos demandados y además contra Enrique Catoni y su esposa como sucesores en interés de los mismos y contra Rosendo Arean Moreno, como heredero de Pilar Moreno Smith, otra de las originalmente demandadas. En esta nueva acción repetían los Aybar las mismas alegaciones que en las anteriores acciones habían sido desestimadas tanto por la corte inferior como por esta Corte Suprema en apelación. Es de hacerse constar que los demandantes al iniciar

cada acción anotaban un *lis pendens* en el Registro de la Propiedad de San Juan en relación con la casa antes mencionada.

Así las cosas, los demandados en la última acción presentaron una petición de *injunction* ante la corte inferior en la que solicitan se prohiba a Andrés y Luciana Aybar y a sus cesionarios o sucesores en derecho la continuación del pleito antes mencionado o que en lo sucesivo inicien o tramiten en contra de los demandantes o sus sucesores en interés pleito o procedimiento alguno que directa o colateralmente pretenda atacar la validez de sus derechos de propiedad sobre el inmueble referido.

Los demandados radicaron excepción previa, moción eliminatoria y una contestación y celebrada la vista correspondiente y practicada prueba la corte inferior dictó sentencia declarando con lugar la petición y expidió el auto solicitado. Contra esa sentencia los demandados radicaron el presente recurso alegando que la corte inferior cometió tres errores, a saber: 1. al aprobar la transcripción de la evidencia, pues admitió que el taquígrafo Sr. Pérez la certificara cuando el que intervino en la vista fué el Sr. Morales; 2. al admitir la escritura de compraventa a favor de Enrique Catoni pues ya él no era dueño ni tenía interés en la propiedad, y 3. al admitir a otro nuevo y desconocido heredero nombrado Rosendo Arean Moreno.

El primer señalamiento carece de méritos. La transcripción de evidencia que obra en autos aparece debidamente certificada por el taquígrafo José Morales Díaz, que actuó durante el juicio. Lo que ha inducido a error a los apelantes es que también aparece del récord que fué el taquígrafo Carmelo Pérez el que actuó en la vista sobre aprobación de la transcripción de evidencia y tomó nota de las enmiendas sugeridas y aprobadas por la corte las que fueron luego hechas en la transcripción.

■ El segundo señalamiento levanta la misma cuestión que los apelantes han planteado por moción radicada ante esta Corte Suprema y sobre la cual oímos por escrito a los apelados. Pretenden los recurrentes que admitamos prueba que no tuvo ante sí la corte inferior, con el fin de demostrar que Enrique Catoni no era dueño de la casa de la calle San José cuando inició esta acción. Que ese era un hecho a ser probado en la corte inferior, lo demuestra el que los apelados a su vez alegan que cuando se inició esta acción su abogado tenía en su poder una escritura a virtud de la cual el Sr. Catoni era dueño de la casa. Si entráramos a considerar la prueba que dentro de este recurso, por primera vez, presentan los apelantes, estaríamos actuando como corte de jurisdicción original en un caso en que dicha jurisdicción no nos ha sido conferida por la ley. Ramos v. Augy, 60 D.P.R. 153. ■ No se cometió el segundo error y tampoco el tercero, pues los recurrentes admiten en su alegato que ellos incluyeron entre los demandados a Rosendo Arean Moreno, como heredero, en la nueva acción iniciada por ellos, y, siendo esto así, no fué la corte inferior quien admitió a dicha parte en el presente litigio sino que, como declaró el abogado de los apelados, él lo incluyó como parte demandante en la petición de injunction porque tenía su representación y porque había sido demandado por los aquí apelantes.

■ Incidentalmente los apelantes alegan que el Lic. Manuel Rivera de la Vega no probó que estaba autorizado para representar al demandante Arean Moreno. La comparecencia de un abogado, debidamente admitido, es prueba presuntiva de su facultad para representar a la persona por quien comparece, e incumbe a la parte que impugna su facultad demostrar que es nula. Claudio v. Palacio y Muñiz, 29 D.P.R. 825. Cuando se impugna esa representación la parte que sostiene la negativa tiene el peso de la prueba para rebatir la presunción. Esto no obstante, en un caso apropiado y cuando se demuestra justa causa, dicha parte puede

obligar al abogado a exhibir su mandato. Weeks *on Attorney at Law,* citado en el caso de *Asociación de Padres Capuchinos* v. *Corte,* 44 D.P.R. 680, 684, en el cual se hizo un estudio detallado y comprensivo de la materia y se estableció la siguiente regla:

". . . Cuando se exponen bajo juramento hechos que demuestran o tienden a demostrar que el abogado no está autorizado por su presunto cliente para comparecer, la corte está justificada en provocar una exhibición de poderes. Esta autoridad de la corte lo mismo puede ejercitarse en procedimientos ordinarios que en aquellos de carácter sumario. . . ."

En el caso de autos los apelantes en ningún momento expresaron bajo juramento nada que pudiera servir de base para que la corte inferior pudiera obligar al abogado de los apelados a demostrar que estaba autorizado a comparecer a nombre de todos o de cualquiera de ellos.

Aquí podríamos dar por terminada esta opinión y desestimar el recurso pues hemos resuelto adversamente a los apelantes los únicos tres errores que han señalado en su alegato. Empero, tomando en consideración que ellos han comparecido por su propio derecho y sin representación profesional, y el hecho de que este es el primer caso de su naturaleza que llega en apelación hasta esta Corte, pasaremos a considerar y resolver la única cuestión fundamental envuelta en este caso, es decir, si procedía o no la expedición del auto de injunction solicitado para prohibir a los demandantes que continúen litigando sobre las mismas cuestiones resueltas en su contra en los distintos pleitos establecidos por ellos anteriormente y que, según resolvió esta corte en el último de ellos, constituyen cosa juzgada entre las partes.

La única defensa establecida por los demandados en la corte inferior a la petición de injunction fué al efecto de que los demandantes tenían un recurso adecuado en ley pues

podían alegar en la nueva acción la defensa de cosa juzgada. Al resolver esta cuestión, la corte inferior se expresó así:

". . . De permitirse un nuevo litigio para discutir nuevamente quiénes son los herederos de Carmen, Manuela y Carolina Smith Aybar y por consiguiente los dueños de la casa de la calle San José, nada impediría que a su terminación y declarada nuevamente sin lugar la demanda se iniciara un nuevo pleito y así sucesivamente *ad infinitum*. Es cierto que en cada uno de ellos los aquí demandantes podrían establecer con éxito la defensa de cosa juzgada; pero ello nunca sería un remedio adecuado. Aparte de las inconveniencias y molestias y torturas morales de verse sometido injustificadamente a una serie interminable de pleitos y contra los cuales una indemnización monetaria no sería jamás una compensación adecuada, en el caso específico que resolvemos ello sería imposible dada la insolvencia de los demandados Aybar Muñoz. La desventaja de los demandantes es manifiesta. Mientras los demandados litigan sin tener que pagar abogado porque se representan a sí mismos los demandantes tienen que incurrir en esos gastos sin esperanza alguna de poder resarcirse. Este es un caso típico para que equidad intervenga e impida una multiplicidad de procedimientos que no tendrían otro objeto que ocasionar un atropello contra los demandantes, máxime si tenemos en cuenta que inmediatamente que los demandados Aybar inician un litigio acto seguido anotan la demanda en el Registro de la Propiedad lo cual tiende indiscutiblemente a arrojar sombras sobre el título de los demandantes. Equidad, por medio del injunction, y sobre la base de impedir multiplicidad de pleitos ha intervenido siempre para proteger los derechos adquiridos en la cosa juzgada."

La jurisprudencia citada por el juez sentenciador sostiene sus razonamientos en cuanto a la procedencia del remedio solicitado.

Pomeroy en su obra sobre "Equity Jurisprudence", 5ta. edición (1941) volumen 1, página 501, sección 253, expone la doctrina general de que la equidad no intervendrá a favor del demandante para impedir que el demandado continúe una acción en su contra hasta tanto que el título del demandante haya sido suficientemente establecido por la decisión

de por lo menos una acción en ley a su favor. Sostiene, sin embargo, que "la corte sí intervendrá y prohibirá que el demandado prosiga con sucesivas acciones en ley, y así establecerá el derecho del demandante, cuando todas las cuestiones de hecho y de derecho envueltas en dichas acciones han sido plenamente determinadas a favor del demandante en algún procedimiento judicial anterior entre las mismas partes."

Uno de los casos más citados sobre la cuestión que discutimos, es el de *Kessler* v. *Eldred,* (1906), 206 U. S. 285, en el cual la Corte Suprema de los Estados Unidos resolvió que procedía el injunction y se expresó así:

"Si los derechos entre litigantes son establecidos por una sentencia final de una corte de jurisdicción competente deben ser reconocidos en toda forma y dondequiera que la sentencia sea merecedora de respeto, por aquellos que están sujetos a la misma."

Y en el de *Steinberg* v. *McKay,* (Mass. 1936), 3 N. E. (2d.) 23 se levantó la misma cuestión que en el de autos en cuanto a que el remedio adecuado era la defensa de cosa juzgada y la corte dijo:

"Se sostiene que el único y adecuado remedio del demandante es defenderse de la nueva acción, levantando la cuestión de cosa juzgada si procede. Es cierto que deben demostrarse bases substanciales de necesidad para inducir a una corte de equidad a negarle a un litigante el derecho a seguir una acción en ley y en ella obtener un juicio por jurado, por el hecho de que la acción no tenga méritos o sea molestosa *(vexatious).* (Citas)·

"En este caso, sin embargo, no hay nada que pueda ser juzgado por un jurado. El litigio establecido por el demandado no sólo no tiene méritos sino que es parte de una sistemática persecución *(harassment)* del demandante a través de pleitos sin base. El caso requiere el remedio de equidad. (Citas)."

Y en el caso de *Lane* v. *Rushmore,* (N. J. 1938), 198 A. 872, citado por la corte inferior, se fundamentó la doctrina en esta forma:

"Sería intolerable permitir a un litigante que sin fin litigara y relitigara su alegada queja. En algún punto en la controversia él tiene que aceptar la sentencia de la corte como final y concluyente y a ese punto se llega cuando una corte de jurisdicción competente ha oído y considerado todo lo que se dijo o pudo decir a través de la evidencia y los argumentos sobre las cuestiones en controversia y rinde su decisión (citas)."

El Juez Story en el caso de *Ocean Insurance Co.* v. *Fields,* 18 Fed. Cas. 532, sucintamente expresó la razón para que esta doctrina subsista, cuando dijo: "Es para bien del interés y política pública que los litigios terminen, o, como dijo un gran jurista, para que los pleitos no sean inmortales mientras los hombres son mortales."

Andrés y Luciana Aybar han litigado y relitigado sus alegados derechos hereditarios sobre la casa número 10 de la calle San José varias veces. Han alegado fraudes cometidos por los distintos letrados que han intervenido en esos litigios. Han alegado la inexistencia y nulidad de documentos públicos otorgados en España y en Puerto Rico. En ningún momento y en ninguno de esos pleitos, a pesar de haber intervenido en su resolución desde el año 1918 distintos jueces de la Corte de Distrito de San Juan, han podido probar sus alegaciones y convencer a dichos magistrados de que les asiste la razón. Esta Corte Suprema desestimó el último de dichos recursos por frívolo y porque las cuestiones planteadas constituían cosa juzgada. No conformes aún, los hermanos Aybar pretendieron continuar litigando las mismas cuestiones ya resueltas y radicaron una nueva acción y la anotaron en el registro. Han ocasionado y pretenden continuar ocasionando gastos y pérdidas a los demandados en dichas acciones, pues los allí demandantes y aquí demandados son insolventes y litigan en forma *pauperis.* Somos de opinión que, de acuerdo con los hechos concurrentes, los peticionarios en este caso tienen derecho a solicitar que se dé término de una vez y para siempre a esta situación

y que, como consecuencia, la corte inferior no erró al expedir el auto de injunction solicitado.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.