CARIBE NITROGEN CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* 1389      *Resuelto:* 29 de enero de 1963

*Sifre & Ruiz Suria* y *Abelardo Ruiz Suria,* abogados de la recurrente; El Registrador recurrido compareció por escrito.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

Caribe Nitrogen Corporation, antes González Chemical Industries, Inc., constituyó con fecha 1ro. de agosto de 1955 una primera hipoteca sobre dos inmuebles sitos en el municipio de Guánica. Esta hipoteca fue inscrita en el Registro de la Propiedad de San Germán el 9 de noviembre de 1955. Mediante documentos públicos otorgados posteriormente se amplió el principal garantizado por esta primera hipoteca. La última ampliación, que es la quinta, lleva fecha de 5 de enero de 1960. Fue inscrita el 5 de febrero siguiente. Así ampliada, garantizaría hasta $3,500,000 en pagarés hipotecarios al 6% anual con fecha de vencimiento en 1ro. de enero de 1966, así como $910,000 en bonos hipotecarios denominados Serie D. Fue expresamente estipulado que para que los bonos Serie D expedidos por la recurrente gozaran de la garantía constituída por la primera hipoteca tendrían que ser autenticados por los fiduciarios que, de acuerdo con el contrato sobre constitución de hipoteca, adverarían estos bonos.

El 31 de agosto de 1960 la recurrente otorgó y entregó a los referidos fiduciarios para su autenticación ocho (8) bonos Serie D por la cantidad de $433,400, sin incluir intereses. Estos bonos fueron debidamente adverados.

Un documento autenticado notarialmente se presentó al Registrador por la Caribe Nitrogen Corporation, representada por su Vice-Presidente Harold S. King, el Chemical Bank New York Trust Company, representado por G. V. Azoy y el Banco de Ponce representado por Ugo J. Lisi, las dos últimas entidades en su carácter de fiduciarios. En dicha "Solicitud de Inscripción de Nota Marginal", se requería que se hiciera constar al margen de la inscripción de la pri-

mera hipoteca que se había contraído una obligación por la cantidad de $433,400 mediante la expedición de ocho bonos de la Serie D por esa cantidad, habiéndose cumplido el requisito de la adveración por los fiduciarios. [1]

El Registrador denegó lo solicitado. Así reza la nota denegatoria:

"DENEGADA la solicitud sobre Notas Marginales que comprende la instancia que precede por observarse que la misma no es el documento público y fehaciente que contempla la Ley Hipotecaria (Art. 3 L.H.) y que no se acreditan las facultades de los señores King y Azoy para la representación que ostentan, tomándose en su lugar anotación preventiva por el término legal a favor de los interesados, de su derecho, en cuanto a la PRIMERA hipoteca por notas al margen de las inscripciones 8va. y 2da. de las fincas números 428 duplicado y 471 a los folios 19 vuelto y 29 de los tomos 16 y 17 de Guánica, respectivamente y en cuanto a la SEGUNDA hipoteca por notas al margen de las inscripciones 9na. y 3ra. de las fincas números 428 triplicado y 471 a los folios 107 vuelto y 32 vuelto de los tomos 18 y 17 de GUÁNICA, respectivamente. San Germán, a 30 de noviembre de 1960."

Surge de la negativa del Registrador que evidentemente consideró la transacción efectuada como una de constitución de hipoteca. Y en su alegato para sostener la nota se ratifica en este criterio. De ahí que entendiera que era requisito el que la misma constara en escritura pública según lo establece el Art. 3 de la Ley Hipotecaria.—30 L.P.R.A. sec. 3—. Dispone dicho precepto que "[p]ara que puedan ser inscritos los

[1] La recurrente otorgó una segunda hipoteca, que al igual que la primera fue ampliada en cinco ocasiones. La quinta aumentaba la cantidad que garantizaría la segunda hipoteca y requería que para que los bonos expedidos estuvieran garantizados por esta segunda hipoteca fueran adverados por los fiduciarios. En la misma fecha que se contrajo la obligación y se expidieron los bonos garantizados por la primera hipoteca, se contrajo otra obligación y se expidieron los bonos que debían garantizar la segunda. Fueron debidamente autenticados y al igual que en el caso de la primera hipoteca se solicitó que se extendiese una nota marginal haciendo constar la expedición de los referidos bonos.

títulos expresados en la sección anterior, deberán estar consignados en escritura pública, ejecutoria o documento auténtico, expedido por Autoridad Judicial, o por el Gobierno o sus agentes en la forma que prescriban los reglamentos". Y el Art. 2 establece que "[e]n los Registros expresados en la sección anterior se inscribirán: 1º . . . 2º Los títulos en que se constituyan . . . hipotecas. . ."

La recurrente por el contrario alega que la hipoteca estaba ya constituída y debidamente inscrita. Que se constituyó para garantizar los bonos que eventualmente otorgaría la recurrente. Y esos bonos podían otorgarse el mismo día en que se constituyó o en alguna fecha posterior. Invoca para fundar su tesis las disposiciones de los Arts. 142 y 143 de la Ley Hipotecaria—30 L.P.R.A. secs. 255 y 256—. Establece el primero de los preceptos citados en su parte pertinente:

"La hipoteca constituída para la seguridad de una obligación futura o sujeta a condiciones suspensivas inscritas, surtirá efecto contra tercero desde su inscripción, si la obligación llega a contraerse o la condición a cumplirse."

Y el segundo artículo estatuye:

"Cuando se contraiga la obligación futura o se cumpla la condición suspensiva de que trata el párrafo primero de la sección anterior, deberán los interesados hacerlo constar así por medio de una nota al margen de la inscripción hipotecaria, sin cuyo requisito no podrá aprovechar ni perjudicar a tercero la hipoteca constituída. . .

"De igual modo deberán hacer constar la falta de cumplimiento de la condición o la no celebración de la obligación."

Y el Art. 178 del Reglamento, —30 L.P.R.A. sec. 1112 dispone en lo que aquí interesa:

"Para hacer constar en el registro el cumplimiento o incumplimiento de las condiciones, o la celebración o no celebración de las obligaciones futuras, de que trata el art. 143 de la ley, presentará cualquiera de los interesados al registrador copia del documento público de donde esto resulte, y en su defecto una

solicitud, firmada por ambas partes, pidiendo el asiento de la nota marginal y expresando claramente los hechos que deban dar lugar a ella."

█ La jurisprudencia de este Tribunal ha sancionado las hipotecas para garantizar operaciones futuras. *Geo P. Plant Milling Co.* v. *Navas*, 22 D.P.R. 273 (1915); *Roig* v. *El Registrador de Humacao*, 22 D.P.R. 629 (1915). En el primero se constituyó una hipoteca para garantizar los giros que el deudor hipotecario suscribiría en el futuro para pagar mercancía comprada al acreedor hipotecario. En el segundo se constituyó la hipoteca para garantizar la suma que el acreedor facilitaría al deudor para el cultivo y recolección de cañas de azúcar. En ambos casos se hizo referencia a los Arts. 142 y 143 de la Ley Hipotecaria que antes transcribimos.

La operación mediante la cual se constituyó la primera hipoteca, con sus subsiguientes ampliaciones, era una para garantizar una obligación que se contraería en el futuro. La recurrente constituyó una hipoteca sobre dos inmuebles para garantizar los bonos que en el futuro expidiera. El acto constitutivo de un derecho real se realizó cuando se otorgó la escritura en la que se constituyó la primera hipoteca. La operación de expedir los bonos y cumplir con el requisito convenido de que fueran autenticados por los fiduciarios, no son actos constitutivos de un derecho real. Ese acto, repetimos, se realizó cuando se constituyó la hipoteca que garantizaría los bonos que en el futuro se emitieran. Es un caso típico de constitución de hipoteca para garantizar una obligación futura. A ese efecto dice Roca Sastre: "Basta con indicar que, en general, para que pueda hablarse de una obligación futura, si bien no es preciso, naturalmente, que la obligación *exista*, no obstante se requiere, por lo menos, que haya cierta *seguridad o posibilidad* de que la obligación existirá, o sea, como dice Jerónimo González: 'que el aparato jurídico creado tenga *consistencia* suficiente para merecer la garantía de sus consecuencias' ". Y continúa Roca Sastre: "Esta cierta *segu-*

*ridad, posibilidad, probabilidad* o *consistencia*, para que pueda afirmarse que estamos delante de una obligación futura, tanto puede examinarse desde un punto de vista de hecho como de Derecho. Así puede exigirse que, al menos en el orden natural de la vida, la deuda sea *posible*, por no estar fundada en un supuesto inverosímil, al objeto de rechazar la garantía de deudas imposibles de surgir. Y también, desde un punto de vista de nexo jurídico, cabe averiguar si es precisa una previa situación *vinculante o de ligamen preliminar* entre las partes, que implique un supuesto de deuda futura, como dice la exposición de motivos de la ley de 1861, es decir, un estado preexistente de *deuda en gestación*, al objeto de eliminar del concepto de obligación futura una *prestación eventual*, a la cual, ni potencialmente, nadie está comprometido." Roca Sastre, *Derecho Hipotecario*, Vol. IV, págs. 433–434 (5ta. ed. 1954).

Y en sentencia del Tribunal Supremo de España de 31 de enero de 1925—165 Jurisprudencia Civil 303—se dice refiriéndose a esta clase de hipoteca: ". . . la hipoteca discutida no es una mera expectativa, por amplitud que se otorgue a este concepto, ni casi un gravamen potencial, sino, por el contrario, un derecho de garantía actual a favor de un probable crédito, que toma puesto preferente en la serie hipotecaria, fija una relación de naturaleza real, con autenticidad indiscutible, y goza de los privilegios de la publicidad en todo lo que no se refiera directamente a la existencia y cuantía de la deuda asegurada". Ver además Cossio y Corral, *Instituciones de Derecho Hipotecario*, pág. 318 *et seq.* (2da. ed. 1956).

Establecido que el otorgamiento de los bonos no es un acto constitutivo de un derecho real, y sí de que se ha contraído la obligación futura, garantizada por la hipoteca ya inscrita, el Art. 143 de la Ley Hipotecaria antes transcrito dispone que los interesados "deberán. . . hacerlo constar así por medio de una nota al margen de la inscripción hipoteca-

ria, sin cuyo requisito no podrá aprovechar ni perjudicar a tercero la hipoteca constituida...."

En cuanto a cómo se practica esa anotación, el Art. 178 del Reglamento de la Ley Hipotecaria, ya hemos visto, dispone que cualesquiera de los interesados presentará al Registrador copia del documento público donde conste que se ha celebrado la obligación y en su defecto "una solicitud firmada por ambas partes pidiendo se extienda la nota marginal y expresando claramente los hechos que deben dar lugar a ella".

El 4 de mayo de 1891 se expidió una Real Orden en respuesta a una instancia elevada a la Dirección General de los Registros por el Sr. Subgobernador del Banco Hipotecario de España "a fin de que se adopte un medio fácil y económico para hacer constar en los Registros de la Propiedad el cumplimiento de la condición suspensiva". Luego de considerar lo dispuesto taxativamente por el Reglamento se expresó lo siguiente:

"Para hacer constar el cumplimiento de condiciones suspensivas de una hipoteca inscrita, bastará que cualquiera de los interesados, o su mandatario, aunque sea verbal o tácito, presente solicitud firmada por ambas partes o por sus respectivos apoderados, en que se exprese claramente los hechos que den lugar a la nota, se haga referencia a la escritura de constitución de hipoteca y se digan el tomo y folio en que está inscrita, números de la inscripción y de la finca, sin que sea preciso presentar nuevamente el poder en caso de que la solicitud esté firmada por la misma persona que en virtud de aquél concurrió al otorgamiento de la escritura. El Registrador exigirá ratificación de los firmantes si no están legitimadas sus firmas por Notario. Y no se hará presentación en el Diario de la solicitud, pero el presentante firmará la nota marginal."

Morell sostiene que esta Real Orden aún está vigente en España, pero que "lo relativo al poder puede llevar consigo peligros porque si el apoderado sigue siéndolo, debe tener dicho poder siendo fácil su presentación y si ha dejado de serlo tal vez por hecho culpable, puede confabularse con la otra parte para perjudicar a tercero". Morell, Tomo IV, pág. 211,

(Madrid 1918). Sin entrar a considerar si está vigente en Puerto Rico la transcrita Real Orden, lo cierto es que la misma es reveladora de cómo debe interpretarse el Art. 178 del Reglamento. Al mismo efecto: De Casso, *Derecho Hipotecario*, pág. 687 (4ta. ed. Madrid 1951); Roca Sastre *op. cit.* pág. 439; Galindo y Escosura, *Comentarios a la Legislación Hipotecaria*, Tomo III, pág. 370 (3ra. ed. Madrid 1896). El documento presentado cumple los requisitos establecidos por el Art. 178 del Reglamento.

■ El Registrador recurrido invoca la autoridad de Morell para sostener que se requiere que la solicitud de que habla el Art. 178 se haga en documento público. *Op. cit.* pág. 212. Pero a poco que se examine con cuidado lo expuesto por este comentarista encontramos que en primer lugar admite la vigencia de la Real Orden, que de hecho le da vida a las disposiciones del artículo del Reglamento, y que lo que expresa Morell en sus comentarios es que para acreditar los hechos a que se alude en la petición deben acompañarse los documentos públicos en que consten. Y no podría ser de otra forma.

■ Ahora bien, la nota recurrida debe sostenerse por el otro fundamento aducido por el Registrador. Si bien es cierto que el Registrador para calificar ha de tener en cuenta el documento presentado así como los complementarios que con él se presenten y los asientos y antecedentes que consten del Registro relacionados con el inmueble objeto de la operación, Morell, *op. cit.*, pág. 259; *Nido y Cía S. en C.* v. *Registrador*, 74 D.P.R. 789 (1954); *Autoridad de Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 847 (1951); *López* v. *Registrador*, 58 D.P.R. 1 (1941); *Delgado* v. *Registrador*, 25 D.P.R. 486 (1917), la realidad es que los complementarios que se acompañaron con el documento presentado no acreditan las facultades de los señores King y Azoy. Tampoco estamos en condiciones de determinar si de inscripciones anteriores constaba esa facultad en el Registro.

*Se confirmará la nota recurrida.*